DANIEL F. STROTHER, PLAINTIFF IN ERROR v. JOHN B. C. LUCAS, DEFENDANT IN ERROR.

It is a general rule that evidence by comparison of hands is not admissible when the witness has had no previous knowledge of the hand-writing, but is called upon to testify merely from a comparison of hands. There may be cases where, from the antiquity of the writing, it is impossible for any living witness to swear that he ever saw the party write. Comparison of hand-writing with documents in a known hand-writing, have been admitted. But these are extraordinary instances arising from the necessity of the case.

Foreign laws should be proved: the court cannot be charged with knowledge of foreign laws.

It was objected that the claim of the plaintiff in error, which was for two arpens of land adjoining the city of St Louis, Missouri, was, from his own showing, no more than an equitable right, for which an action of ejectment would not lie. There is in the state of Missouri, an act of the legislature regulating the action of ejectment, and enumerating various classes of cases of claims to lands where the action will lie, among which is a claim under any French or Spanish grant warrant, or order of survey, which, prior to the 10th of March 1804, had been surveyed by proper authority, under the French or Spanish governments, and recorded according to the custom and usages of the country. This would reem broad enough to embrace the claim in question, and authorise the right to be tried in an action of ejectment. *Quære*, if under this law, an ejectment could be maintained on an equitable title in the courts of the United States, in the state of Missouri.

Construction of the act of congress of 2 March 1805, entitled "an act for ascertaining and adjusting the titles and claims to land within the territory of Orleans and the district of Louisiana," passed March 2, 1805; and of the fourth section of an act respecting claims of land in the territories of Orleans and Louisiana," passed March 3, 1807.

ERROR to the district court of the United States for the district of Missouri.

This was an action of ejectment in the district court of Missouri, brought by Daniel F. Strother of Kentucky, against John B. C. Lucas of Missouri, to recover a tract of land, particularly described in the declaration, containing eighty arpens, adjoining the city of St Louis. The defendant pleaded the general issue, and the cause was tried at the September term 1830, when there was a verdict for the defendant, and judgment rendered thereon; to reverse which, this writ of error is prosecuted. The record contains a bill of exceptions, which sets out at large all the testimony given at the trial, and the decisions of the court, which were excepted to.

The premises in dispute consist of two *common field lots*, of one by forty arpens each. The common field of St Louis (of which the premises in question are a part) is a large tract of land lying immediately west of the former boundary of the town of St. Louis, and extending for some distance north and south of it. The lots are parallelograms, of one or more arpens in front, and extending westward to the uniform depth of forty arpens. The common field was separated from the town and town lots, by a fence extending the whole length of the eastern front; there were no division fences, though the lots were held and cultivated separately, and each proprietor was bound to keep up the fence in front of his lot. The witnesses, when speaking of these lots, use the term one arpen, two arpens, &c., meaning always the front of the lot spoken of, and the depth must be understood to be forty arpens: thus a lot of one by forty arpens, is called one arpen, &c.

The facts of this cause are these: some time in the year 1772, Don Manuel Duralde surveyed, and laid off into lots, the common field of St Louis. It does not appear, however, that he was an official surveyor, nor does any authority for the survey appear. Among the lots laid off were the two mentioned in the plaintiff's declaration. One of these appear to have been surveyed for *Joseph* Gamache and the other for Rene Kiercereau. These surveys are shown by two documents set forth in the bill of exceptions, as extracts from the *Livre terrien*, purporting to be a registry of the returns made by Duralde. In the margin of the registry of the survey for Kiercereau, are these words: "1798, St Cir, 1 arpen" and on the margin of the registry of the return of Gamache's survey, these words are found: "1793, St Cir, 1 arpen; and a memorandum in French, which rendered into English is as follows: "the name of said Gamache is Baptiste instead of Joseph." There was also some other evidence given at the trial to establish the fact, that the person for whom the survey was made was not *Joseph*, but Baptiste or John Baptiste Gamache; the lots, thus surveyed, adjoined each other, that of Gamache being on the north and Kiercereau's on the south; the northern lot was bounded on the north by a lot of Bissonet, alias Bijou, and the southern on the south by a lot of Bequette.

On the 9th January 1773, *John Baptiste* Gamache, by deed of exchange, conveyed to Louis Chancillier, the northern half

of the northern lot; and on the 6th of April 1781, a deed was executed by one Marie Reneux Robillar, purporting to convey to Louis Chancillier, the southern, or Kiercercau's lot. In the body of this deed, Rene Kiercereau is stated to be a subscribing witness, and there is a signature to the deed as such, alleged to be his. There is also some evidence to show that the whole name of the grantor was not written by herself; both these deeds were, however, admitted as evidence. Chancillier cultivated a part of the two lots until his death, which happened in 1785: that is to say, he cultivated the whole front of the southern lot, and the southern half of the northern lot, to the extent of a few arpens in depth. On the 8th of June 1785, after the death of Chancillier an inventory of his estate was taken, and among the items is found one arpen and a half of land in the common fields, which was admitted to have been regularly sold to, and all the title which Chancillier had vested in, Madam Chancillier the widow. It does not appear that any part of the land in question was ever occupied, possessed or cultivated after the death of Chancillier, by any body claiming under him. The widow remained about two years at St Louis, when she intermarried with one Beauchamp; and she and her husband removed immediately to St Charles in the same state, and at a distance of about twenty miles from St Louis, where Beauchamp died. The widow, some time after, was married to one Basil Laroque, who died in 1828. The widow of Chancillier, from the time of her marriage with Beauchamp, until the commencement of this suit, resided in St Charles, and it does not appear that she claimed the premises in dispute until about the year 1818, and, it was alleged, not until she was urged to it by others. On the 12th September 1828, she transferred her claim by deed, to George F. Strother, who conveyed to the plaintiff.

Soon after the death of Chancillier, and some time in the year 1785 or 1786, Hyacinth St Cyr was put into the possession of the two lots in question by the syndic of the district, the fence in front not having been kept up, and the lots, therefore, considered as abandoned. St Cyr soon after purchased of Gamache and Kiercereau their claims; he continued to cultivate and possess both lots in his own right, from the time of his first entry in 1785 or 1786, and kept up his part of the fence until the

whole common field inclosure was destroyed in 1798 or 1799. In 1801, Auguste Choteau became the purchaser of the two lots, at the public sale, of the effects of St Cyr, who was an insolvent debtor: and in 1810, the two lots were confirmed to Auguste Choteau by the board of commissioners appointed for the adjustment of land claims. Choteau had, previously to the confirmation, conveyed the lots to the defendant, Jean B. C. Lucas, who has been in the uninterrupted possession ever since the year 1808. These are the material facts of the case as they appear by the bill of exceptions.

At the trial, the plaintiff offered sundry depositions to prove the signature of Kiercereau as witness to the deed of Marie Reneux Robillar. These depositions were rejected. It appeared that not one of the witnesses ever saw him write or knew his hand writing; but it having been proved that Kiercereau had been a chantre in the Catholic church at St Louis, the witnesses had examined the register of the interments and marriages, and the name of Kiercereau appearing subscribed to some of the entries as witness, they were asked to deliver their opinion as to the signature on the deed by comparison with the signatures in the registry, not one of which was proved to have been made by Kiercereau, nor did it appear to have been a part of his official duty to sign the register; and it did appear that there were living witnesses who had seen Kiercereau write and knew his signature; one of whom (Pierre Choteau) was actually examined as a witness in the cause.

On the testimony before the jury, the court, on the prayer of the defendant, gave the following instruction to wit:

If the jury find from the evidence, that the two confirmations to Auguste Choteau, given in evidence by the plaintiff in this case, are for the same land, and include all the premises in the declaration mentioned, the plaintiff cannot recover in this action.

The jury found a verdict for the defendant, upon which judgment was entered by the district court. The plaintiff prosecuted this writ of error.

The case was argued by Mr Benton, with whom was also Mr Taney, for the plaintiff in error; and by Mr Wirt for the defendant.

Mr Justice THOMPSON delivered the opinion of the Court.

This case comes up on a writ of error from the district court of Missouri.   It was an action of ejectment for two arpens of land in front and forty arpens in depth, in and adjoining the city of St Louis in the state of Missouri.

The material question in the case arises upon an instruction given to the jury upon the prayer of the defendant below, who is the defendant here.

Upon the trial no evidence was given on the part of the defendant, and the plaintiff having closed his case, the defendant moved the court to instruct the jury as follows: "that if the jury find from the evidence that the two confirmations made by the board of commissioners to Auguste Choteau, given in evidence by the plaintiff in this case, are for the same land, and include all the premises in the declaration mentioned, the plaintiff cannot recover in this action."   Which instruction was given, and the jury found a verdict for the defendant.

In the course of the trial certain depositions were offered in evidence, which, among other things, went to prove the hand writing of Rene Kiercereau, whose name appeared as a witness to one of the deeds which had been admitted in evidence (and who, in the body of the deed, was described as a witness of assistance), by comparing the hand writing of the witness with the hand writing of entries made in a certain register of marriages and interments, alleged to have been made by the witness; of which, however, there was no direct evidence.   The depositions, so far as they went to prove the hand writing of the witness to the deed by comparison, were objected to and overruled by the court, to which exception was taken.

It is a general rule, that evidence by comparison of hands is not admissible, where the witness has had no previous knowledge of the hand writing, but is called upon to testify merely from a comparison of hands.   There may be cases, where, from the antiquity of the writing, it is impossible for any living witness to swear that he ever saw the party write, comparison of hand writing with documents, known to be in his hand writing, has been admitted.   But these are extraordinary instances, arising from the necessity of the case, and which do not apply to the one before the court.   For there were living witnesses examined as to the hand writing, and, besides, the

deed was received and read in evidence, and the plaintiff had the full benefit of it. But it is said, the evidence was offered for the purpose of identifying the witness, and to show that he was the original grantee of the forty arpens, and the husband of Marie Reneux Robillar; and being named in the deed as a witness of assistance, it operated by the Spanish and French law as a conveyance of his own title, the same as if he had signed the deed as grantor.

There are two answers to be given to the objection made to the ruling of the judge in the court below, in the view now presented. In the first place, that was not stated as the purpose for which it was offered, nor was it shown that such was the operation of the deed thus witnessed by the Spanish or French law; and these being foreign laws, should have been proved. The court cannot be charged with knowledge of foreign laws. But, in the second place, the record does not show that the judge was called upon to express any opinion with respect to the legal effect and operation of the deed, or that the plaintiff had not the full benefit of its being considered his deed. And, indeed, it would seem from the course of the trial, that it was so considered, or at all events the contrary does not appear from any question presented to the court on the subject.

Two other points have been made and argued here, which do not appear to have been raised in the court below, and which will be very briefly noticed.

It is objected on the part of the defendant that the plaintiff's claim, even from his own showing, is no more than an equitable right, for which an action of ejectment will not lie.

There is in the state of Missouri an act of the legislature regulating the action of ejectment, and enumerating various classes of cases of claims to land, where the action will lie; among which a claim under any French or Spanish grant, warrant, or order of survey, which, prior to the 10th of March 1804, had been surveyed by proper authority under the French or Spanish governments, and recorded according to the customs and usages of the country. Rev. Laws Miss. 343.

This would seem broad enough to embrace the claim now in question, and authorise the right to be tried in an action of ejectment in the state courts. How far the courts of the

United States will adopt such practice, has come under the consideration of this court in several cases, Robinson v. Campbell, 3 Wheat. 212; De la Croix v. Chamberlain, 12 Wheat. 599; and the court has been strongly inclined against sustaining the action upon a mere equitable title, except perhaps where, by the statutes of a state, a title which would otherwise be deemed merely equitable, is recognized as a legal title, or a title which would be valid at law. We do not mean, however, to be understood as expressing any opinion upon this question in the present case. But as the cause has been tried upon the merits, and so argued here, we think best to decide upon the merits, without noticing the objection to the forms of the action.

An objection rather of a novel character has been made on the part of the plaintiff to the confirmation of the title in Choteau, because the defendant was one of the commissioners who confirmed the claim, and had purchased the lots of Choteau, before the confirmation. On reference to the proceedings of the commissioners, the allegation does not appear to be founded in fact: although he was one of the commissioners, he did not sit with them when this claim was confirmed. But it is a little singular that the plaintiff should himself give this confirmation in evidence in support of his own title, and then attempt to impeach it.

The main question in the cause, however, grows out of the instructions given by the court to the jury: and to a right understanding of that question, a brief statement of the case as it stood when the instruction was given becomes necessary.

The plaintiff as the origin of his title gave in evidence two certified copies of entries of surveys from what is called the Livre Terrien. The one, purporting to be an entry of a survey made for Rene Kiercereau of one by forty arpens: the other, a survey purporting to have been made for Joseph Gamache for the same quantity. On the 29th of January 1773, Gamache conveyed to Louis Chancillier one half of the lot surveyed for him, and on the 6th of April 1781, Marie Reneux Robillar (the wife of Rene Kiercereau) conveyed to Louis Chancillier the lot surveyed for him. Chancillier cultivated a part of these lots until his death in 1785; after his death, his widow, Madame Chancillier, became the purchaser of the one and a

half arpens of land, but did not take possession of or cultivate these lots; nor does it appear that she laid claim to them until about the year 1818; and in September 1828 she sold the lots to George F. Strother, who conveyed the same to the plaintiff. Soon after the death of Chancillier, and some time in the year 1785 or 1786, Hyacinth St Cyr was put into possession of the two lots by the syndic of the district, the fence in front not having been kept up; and from the proceedings of the commissioners introduced by the plaintiff himself, it appears that Kiercereau, on the 23d of October 1793, conveyed to St Cyr his claim to the lot surveyed for him, and on the same day Gamache conveyed to St Cyr his claim to the lot surveyed for him. And by the same proceedings, it appears that at a public sale in the year 1801 made of the property of St Cyr, Auguste Choteau became the purchaser of these lots, and on the 11th of January 1808, he conveyed the same to the defendant. St Cyr, from the time of his first entry on the lots in 1785 or 1786, continued to cultivate and possess them, and keep up his part of the fence until the whole common field inclosure was destroyed about the year 1798; and Choteau, from the time of his purchase in 1801 until he sold to the defendant, and the defendant from the time of his purchase, have continued to occupy the same to the present time, and in the year 1820 the claim to the two lots was confirmed to Auguste Choteau by the commissioners.

From this statement of the case, according to the plaintiff's own showing, there is a regular deduction of title or claim, from the persons for whom the lots were surveyed to the defendant. But it appears that those persons, Kiercereau and Gamache, sold their claim twice; in the first place to Louis Chancillier, under whom the plaintiff claims; and in the second place to St Cyr, under whom the defendant claims. If these title papers were to be considered independent of the acts of congress and the proceedings of the commissioners, the plaintiff, being prior in point of time, would prevail, so far as depended upon the deduction of a paper title, and independent of the question of possession.

It becomes necessary, therefore, to inquire how far the acts of congress apply to and affect any part of these title papers; keeping in mind that it is all the plaintiff's own evidence; he

[Strother v. Lucas.]

having produced the proceedings before the commissioners, is not now at liberty to deny the facts therein stated.

No grant has been shown under which the plaintiff sets up his claim; his title was therefore incomplete, and by the fourth section of the act of 1805 (3 vol. L. U. S. 653), the person claiming the land was bound to deliver to the register of the land office, or recorder of land titles, within the district where the land lies, a notice in writing stating the nature and extent of his claim; and also to deliver to the said register or recorder, for the purpose of being recorded, every grant, order of survey, deed, conveyance or other written evidence of his claim. And the law directs that they shall be recorded by the register or recorder, &c. with a proviso, however, that where the lands are claimed by virtue of a complete French or Spanish grant, it shall not be necessary for the claimant to have any other evidence of his claim recorded, than the original grant or patent, together with the warrant or order of survey and the plat; but all the other conveyances or deeds shall be deposited with the register or recorder, to be laid before the commissioners. And the act then declares that if such person shall neglect to deliver such notice in writing of his claim, or cause to be recorded such written evidence of the same, all his right, so far as the same is derived from the two first sections of the act, shall become void, and forever thereafter barred. If any doubt should arise whether the original right, claimed in this case, comes within the two first sections of the act, that is removed by the act of 1807 (4 vol. L. U. S. 112), which repeals the proviso to the first section of the act of 1805, and the power of the commissioners is enlarged. The fourth section declares that the commissioners shall have full power to decide, according to the laws and the established usages and customs of the French and Spanish governments, upon all claims to land within their respective districts, where the claim is made by any person or persons, or the legal representative of any person or persons who were, on the 20th of December 1803, inhabitants of Louisiana, and for a tract not exceeding the quantity of acres contained in a league square, &c. which decision of the commissioners, when in favour of the claimant, shall be final against the United States. And the time is extended for delivering notices and evidences of

the claim, but declaring that the rights of such persons as shall neglect so doing, shall, so far as they are derived from or founded on any act of congress, ever after be barred and become void, and the *evidences* of their claims never after admitted as evidence in any court, of law whatever. There is no evidence that notice of the claim, now set up, was ever given as required by these laws; or that the deeds from Kiercereau and Gamache to Chancillier were ever delivered to be recorded as required by the law. And Madam Chancillier, having slept upon this claim for so great a length of time, from the year 1785 to 1818, there is every reason to conclude she had abandoned it; and these deeds cannot now, under the provisions of these laws, be received as evidence of any right to be established under the acts of congress. And it must have been understood, upon the trial, that the plaintiff sought to establish his right under these acts of congress, or he would not have produced the confirmation of the commissioners as evidence of his right. But having relied upon it in support of his own claim, he ought not now to be permitted to deny that it was one properly submitted to the commissioners. Had he rested his claim upon a title derived from Chancillier, without the aid of the acts of congress, the evidences of his title would not have been affected by those acts; but the defendant would, in that case, have been fully protected by his length of possession. When, however, a part of the plaintiff's evidence was the proceedings of the commissioners upon this very claim, this court must consider the instruction of the judge as referring only to the effect and operation of the confirmation under the laws in relation to such claims. And in that view of the case the instruction was perfectly correct.

There is, however, some obscurity in the application of the instruction given by the court; but from the evidence set out in the bill of exceptions, we cannot say there was any error. And the justice and law of the case, growing out of such a length of possession, are so manifestly with the judgment in the court below, if we look at the whole evidences on the record; that we feel disposed to give the most favourable interpretation to the instructions of the court. And we the more readily incline to think the light in which the instruction is here considered was that in which it was understood on the

[Strother v. Lucas.]

trial, because the counsel for the plaintiff in error has contended on the argument here, that this confirmation enures to the benefit of the owner of the claim: that the commissioners decide only the abstract right, as against the United States, without regard to the person who sets up the claim. And it is upon this ground only, that the plaintiff would have introduced in evidence the decision of the commissioners which was directly against his own right; he thereby probably expecting to destroy the effect of the adverse possession, and make the possession as well as the confirmation of the commissioners enure to his benefit. But this view of the case cannot be sustained; and the judgment of the court below must be affirmed.

This cause came on to be heard on the transcript of the record from the district court of the United States for the district of Missouri, and was argued by counsel; on consideration whereof, it is adjudged and ordered that the judgment of the said district court in this cause be, and the same is hereby affirmed, with costs.