### C. J. CARPENTER *et al.*, Appellants, *v.* C. S. RANNELLS *et al.*, Respondents.

1. *Land claim under Spanish permission of settlement conveys only the equitable title, but equitable title sufficient for the confirmation.*—A claimant of land under a Spanish permission of settlement has merely an equitable title. The legal title would not pass to the heir till the claim was confirmed by the United States; but the equitable title, for the purposes of confirmation, would be sufficient. The confirmation would inure equally to the claimant, be his title legal or equitable.

2. *Lands and land titles — Claims before board of land commissioners by B., as assignee of A.— Confirmation to A. or his legal representatives — Effect of on claim of B.*—Where the records of the proceedings before the board of United States land commissioners for the adjustment of claims, in 1811, showed that B., as assignee of A., claimed certain land, under the act of Congress of March 2, 1805 (U. S. Stat. 324), and produced to the board evidence of his derivative title, the legal effect of a judgment of the board confirming the land "to A. or his legal representatives" was to confirm the title to B., although his name was omitted in the form of the confirmation.

3. *Recorder of land titles, headings of — Records of U. S. land commissioner superior to.*— The titles for headings prefixed by the recorder of land titles to his records of papers in a case must yield if they come in conflict with the records of the United States land commissioners. Such title or heading of papers, recorded by the recorder, neither fixed their character nor determined the fact as to who the claimant was.

*Appeal from St. Louis Circuit Court.*

*Hill & Jewett*, for appellants.

I. The court below erred in holding the confirmation to be to James Bankson, assignee of John Butler. John Butler was the original claimant in 1806; James Bankson was a second claimant in 1811. The first and second claims, if ever made, were directly in conflict, and the board granted the land to John Butler and his legal representatives. It was a direct confirmation

to Butler as the original claimant. (Strother v. Lucas, 12 Pet. 453 ; Bissell v. Penrose, 8 How. 338 ; Landes v. Brant, 10 How. 370 ; Hogan v. Page, 2 Wall. 606.)

II. In this case there was an original claimant and an adversary claimant before the same board, if the heading of the minutes of the proceedings is correct, and the adversary claimant asserted that he was assignee of the original claimant by force of the lease and agreement for a sale on condition, not proved before the board to have been performed. The board passed upon these two claims, and confirmed the original claim, and granted the land to John Butler or his legal representatives. It was gross error to say that this confirmation was to the assignee claiming in April, 1811, when his claim was rejected by the confirmation of the claim of the original claimant in express terms. In Hogan v. Page, the Supreme Court of the United States held that where there is only one claimant, "Lamonde, assignee of Aug. Conde, and the board granted to the representatives of Conde forty arpents," the question as to whom the title should inure to was one for inquiry in the courts, upon the facts proved. The Supreme Court of Missouri, in the same case, held that the confirmation operated as a grant to Conde and his legal representatives. The Supreme Court of the United States modified the State court decision by giving Lemonde the privilege of proving up his title as assignee, although he was the sole claimant before the board. In the case at bar, the original claimant and grantee, and possibly the second claimant, pretending to be assignee, were both before the board claiming the same land ; and the board confirms and grants the land to John Butler and his legal representatives, to the exclusion of Bankson.

*Glover & Shepley*, for respondents.

I. The confirmation in this case was to James Bankson, the claimant before the board. The board itself has determined that matter by the entry of their first action on the claim. The filing of the deed of Butler to Bankson shows that Bankson was the claimant before the board. (Bissell v. Penrose, 8 How. 337–8.) The transfer of Butler to Bankson was efficient to transfer to

Bankson the complete, equitable, and indeed legal, title to the land. The equitable title to land in the claimant is just as efficient as a complete legal title to obtain a confirmation, and inures equally to plaintiff, whether his claim be an equitable or legal one. (Papin v. Massey, 27 Mo. 445.) But even if it was questionable what was the situation of the claimant without his showing a compliance, he did show such compliance before the board by showing a constant cultivation of the land. John Butler was never a claimant before the board, and therefore could have no claim conferred to him. (Magwire v. Tyler, 40 Mo. 406.) The claimant Bankson was the person to whom the land was confirmed. (Bissell v. Penrose, 8 How. 338; Boone v. Moore, 14 Mo. 420; Hogan v. Page, 2 Wall. 605; 22 Mo. 55; Connoyer v. Washington University, 36 Mo. 480; Easton v. Salisbury, 21 How. 426.)

II. The equitable owner of the New Madrid land, at the issuing of the New Madrid certificate, is the person to whom it belongs. The title to land under a New Madrid certificate is to be determined in an action of ejectment, according to the equitable rights of the parties. (Sess. Acts 1838–9, §§ 2, 3 ; R. C. 1845, p. 442, §§ 11, 12 ; Mitchell v. Tucker, 10 Mo. 260.) The title to the newly-located land belongs only to the person owning the land in lieu of which the newly-located land was located. (Wear et al. v. Bryant, 5 Mo. 147; Kirk v. Green, 10 Mo. 252; Page v. Hill, 11 Mo. 149.)

CURRIER, Judge, delivered the opinion of the court

This is an ejectment suit for two hundred arpents of land in township 45, St. Louis county, located under New Madrid certificate of re-location No. 511. This certificate was issued under the act of Congress of February 17, 1815, and supplementary acts, in lieu of lands in New Madrid county which had been injured by earthquakes. The plaintiffs seek to deduce title to the premises in suit through John Butler, who acquired an interest in the New Madrid lands in virtue of a Spanish permission of settlement granted April 16, 1801. This inception of title is conceded. The defendants, however, contend that Butler, July

23, 1801, by a conditional sale, conveyed his inchoate title to James Bankson; and that Bankson, under the act of Congress of March 2, 1805, filed his claim to the lands with the United States land commissioners, as also his evidence of derivative title, and procured confirmation of the same to himself. The plaintiffs admit the conditional sale, but insist that there is no evidence that the stipulated conditions were complied with, and claim that Butler, in fact, made the claim which was filed with the land commissioners, and secured a confirmation for his own benefit. The effect to be given to the proceedings of the land commissioners determines the disposition to be made of the case; for if Butler was the claimant before the land commissioners, and the confirmation was to him, it is not questioned that the plaintiffs have his title. On the other hand, if Bankson was the claimant, and furnished the evidence of his derivative equitable title, and the confirmation inured to him, and not to Butler, then the plaintiffs have no title. At the trial the court declared, as matter of law, that the "legal effect of the proceedings before the board of commissioners for the adjustment of land titles in 1811, read in evidence by the plaintiffs, is to confirm the land therein mentioned to James Bankson, assignee of John Butler, the assignment by Butler to Bankson having been filed as part of the claim of said Bankson."

This instruction assumes that Bankson was the claimant before the board. Does the record of the proceedings of the board show this fact? The following entries appear:

"*Claim, Statement, and Notice.* — John Butler claims 200 arpents of land situated in the district of New Madrid, under second section of the act of Congress."

Then follows the record of an order and certificate of survey, the survey being dated February 6, 1806. Then follows Butler's contract of sale to Bankson. The first action which the board appears to have taken on the subject was in April 12, 1811. The record is as follows:

"*Friday, April* 12, 1811.

"Board met. Present: John B. C. Lucas, Charles B. Penrose, and Frederick Bates, commissioners.

" James Bankson, assignee of John Butler, claiming 200 arpents of land situated on Cypress Swamp, district of New Madrid, produces to the board an order of survey dated April 16, 1801, a certified copy of a conditional transfer from Butler to claimant, dated July 23, 1801, a plat of survey dated February 2, 1806.

" The board grant to John Butler, or his legal representatives, 200 arpents of land, and order that the same be surveyed as nearly in a square as may be so, and to include his improvements.

" Board adjourned till Monday next, 9 o'clock A. M."

The record is then signed by the commissioners.

The record then shows an entry under date of June 20, 1811, thus: " Board met. Present, full board. Certificate No. 1103. John Butler's legal representatives, book 5, p. 148. Survey at expense of the United States." Certificate No. 1103 recites that the board had " decided that the legal representatives of John Butler" were entitled to a patent. The certificate is dated June 20, 1811. It is thus seen that the record shows with distinctness that James Bankson, as assignee of John Butler, claimed the land, and "produced" to the board the evidence upon which a confirmation was granted. The memorandum, " John Butler claims," etc., is evidently an error. When the commissioners took up the claim and acted upon it, they only recognize Butler as the assignor of Bankson. Bankson is recognized as the real claimant, and as the party who in due time and way furnished the evidence on which the action of the board was founded. The conditional transfer from Butler to Bankson was a prominent feature in the evidence, and shows that Bankson was the claimant before the board, and that he was claiming under the conditional conveyance. The transfer furnished a link in his chain of title, and was therefore important to him. Butler's claim rested upon the original permission of settlement and survey. That was his evidence of title. The only effect of the transfer was to show that he had parted with his interest, and that Bankson was the true equitable owner.

Neither Butler nor Bankson had a legal title. The claim originated in a permission of settlement. The legal title did not

pass till the claim was confirmed by the United States. The confirmation, therefore, was of an equitable title. But the equitable title, for the purpose of the confirmation, was sufficient. The confirmation inured equally to the claimant, whether the title was legal or equitable, as was settled in Papin v. Massey, 27 Mo. 455.

The contract of sale, given in evidence by the plaintiff, shows that the entire purchase money was paid by Bankson, and that nothing remained for him to do but the performance of the stipulated settlement duties, which were of benefit to him, and of no advantage to Butler, the seller. The performance of these duties constituted no part of .the consideration of the sale. They were conditions to be performed in order to the acquisition of a perfect legal title from the Spanish government. . These conditions were to be performed in three years from July 23, 1801, the date of the contract. The land commissioners' records show that evidence was produced before them proving that the "premises were improved, inhabited, and cultivated in 1802, and continuously till 1805," and they must have found the fact to have been so.

Assuming, then, that the records show that Bankson was the legal claimant before the commissioners, and that he produced to the board the evidences of his title on which the claim was founded, what was the legal effect of the judgment of confirmation? Was the title thereby confirmed in Bankson? That is the question that controls the case. According to the rule laid down in Bissell v. Penrose, 7 How. 338, followed in Boon v. Moore, 14 Mo. 420, and frequently referred to in subsequent decisions, and never overruled, that question must be answered in the affirmative.

In Bissell v. Penrose the case was this: the claim was for 4,000 arpents of land by the five sons of Vasques, one of whom, Benito, had assigned his share to one Rudolph Tillier. Tillier filed his claim for confirmation with the land commissioners. It was confirmed as follows: "The board are unanimously of the opinion that the claim ought to be confirmed to said Benito, Antoine, Hypolite, Joseph, or Pierre Vasques, or their legal representatives." It was held that this confirmation inured to

the benefit of Tillier, who filed and proved up the claim before the land commissioners, although his name does not appear as the confirmee. Nelson, J., in delivering the opinion of the court, says: "By that act (the act of 1805) every person claiming lands, etc., shall deliver to the recorder a notice, etc., of the nature and extent of his claim, and also the grant, order of survey, deed, conveyance, or other written evidence of his claim, to be recorded ; provided, at the same time, in the case of a complete grant, that the claimant need only record the original grant, together with the order of survey and plat, all other conveyances and deeds to be deposited with the recorder—thereby making a distinction between the two cases as it respects the derivative title, and in both clearly contemplating that the assignee might be a claimant." The judge then proceeds to say: "This is the view taken of the question in Strother v. Lucas on each occasion when it was before this court. (6 Pet. 772 ; 12 Pet. 458.) It was there held that the confirmation was to be in favor of the person claiming it."

Boon v. Moore, 14 Mo. 420, presents this case. The claim in question in that suit was filed before the recorder of land titles in 1808, by Jesse Richardson, assignee of Mackay, who was assignee of David Cole, the original concedee. The transfers from Cole to Mackay, and from Mackay to Richardson, were produced and filed with the commissioners. The confirmation, however, was to "David Cole, or his legal representatives." Copies of these transfers were offered in evidence and excluded. The propriety of their exclusion was a question before the Supreme Court. In reference to it, Napton, J., says : "If the confirmation by the act of Congress of July 4, 1836, was to Richardson, and not to the legal representatives of Cole, the admissibility of these copies is an immaterial question. We understand the Supreme Court of the United States to have distinctly decided this question in the case of Bissell v. Penrose."

There can be no doubt as to what the court understood the effect of the decision in Bissell v. Penrose to be. If the exclusion of the copies was an immaterial matter, it was so because the confirmation adjudicated Richardson's title, and thereby

superseded the necessity of going into proof of its sufficiency prior to the confirmation. And this is the doctrine laid down in Boon v. Moore, as recognized by the judge delivering the opinion of the court in Hogan v. Page, 22 Mo. 65. In Hogan v. Page, 2 Wall. 605, it was held that a confirmation to the original grantee, or his " legal representatives," embraced representatives of such grantee by contract as well as by operation of law; leaving the question open in a court of justice as to the party to whom the confirmation should inure. But in that case the " minutes did not record the fact that any assignment of the land from Conde (the original grantee) to Lamonde (the claimant) had been presented to the board, or that other proof was made of such conveyance ;" and the absence of that " fact " marks exactly the difference between that case and the class of cases it represents, and Bissell v. Penrose, Boon v. Moore, and other like cases. Where the assignee claimant made no proof of his derivative title before the board, the confirmation is open ; but where that proof was supplied and submitted to the judgment of the commissioners, so that they could pass upon that as well as upon the merit of the original concession, the confirmation inures to the claimant, although his name is omitted in the form of confirmation. Such seems to be the result of the authorities. In Connoyer v. Washington University, 36 Mo. 481, that principle seems to be recognized by the court, although it held that in that case the defendants failed to bring themselves within its scope.

The same judge (Nelson) who delivered the opinion in Bissell v. Penrose also delivered the opinion in Hogan v. Page, and clearly distinguishes between the two classes of cases, thus: " On looking into the cases cited on the part of the plaintiff, it will be seen that the confirmations which there appear were either to the assignee claimant by name, or in general terms ; that is, to the original grantee or his legal representatives ; and where, in the latter form, it was the assignee claimant who had presented the claim before the board, and had furnished evidence before it of his derivative title, and which had not been the subject of dispute." The present case, therefore, is different from either of

the cases referred to. There is here no abandonment of the principle announced in Bissell v. Penrose, but rather an affirmance and reiteration of it. That principle, as illustrated and applied in Boon v. Moore, clearly meets the facts of the case before us. What could the distinction drawn by Judge Nelson in the Hogan case between assignee claimants who had, and those who had not, filed the evidence of their derivative titles, avail, unless it placed the former on a better footing than the latter? And how were the parties filing the evidence benefited by that..fact, unless the confirmation thereupon awarded is treated as an adjudication of the derivative as well as the original title? If this result does not follow, it is difficult to perceive what substantial reality there is in the distinction taken, and upon which the Hogan case appears to turn.

The result of these views involves an affirmance of the judgment of the Circuit Court, which was for the defendants. The other judges concur.

On motion for a rehearing, CURRIER, Judge, delivered the opinion of the court.

The principle laid down in Bissell v. Penrose, and in the cases following that adjudication, is not drawn in question by the plaintiffs' motion for a rehearing ; but it is insisted that the facts of the present case do not bring it within the influence of these decisions, it being claimed .that the records of the recorder of land titles show that Butler, and not Bankson, was the party claimant who forwarded the confirmation. It is insisted that the United States land commissioners' records must "go under" when they come in conflict with the recorder's entry, which assumes to name and identify the claimant. We take a different view of the legal effect of these records, and are of the opinion that the titles or headings which the recorder saw fit to prefix to his record of the papers in the case, must yield if they come in conflict with the records of the land commissioners. These records show that Bankson was recognized by the commissioners as the legal and only claimant before them, and that they adjudicated the claim in conformity with that .fact. We adhere,

therefore, to our opinion that the Circuit Court, by its instruction, declared the true legal effect of the action of the commissioners. It was the duty of the recorder to record the title papers delivered to him for that purpose; but the title or heading prefixed by him to the record of the papers in a particular case neither fixed the character of the papers recorded, nor determined the fact as to who the claimant was. These were matters not for him, but for the land commissioners, to pass upon.

But it is said that a stranger can not set up an outstanding equity against the party holding the fee. Butler had no fee to the New Madrid lands unless he acquired it through the confirmation, and that brings us back again to the question respecting the legal effect of the action of the United States land commissioners. Prior to the confirmation neither party held any interest in the lands beyond a mere equity. If the confirmation was to Bankson and inured to his benefit, we do not understand it to be claimed that the plaintiffs have a title upon the strength of which they can recover in this case.

The motion is overruled.