## KEYSER *v.* PICKRELL.

---

Pleading and Practice ; Handwriting, Proof of Genuineness of ; Expert Testimony ; Admissions ; Estoppel.

1. In an action of *assumpsit* against the alleged endorser of a promissory note, the genuineness of the endorsement may be attacked under a plea of the general issue.
2. On a question as to the genuineness of handwriting it is not error to allow the jury to compare the disputed writing with authentic writings, which were introduced in evidence for another purpose by the party objecting to the comparison, although they may have had no relevancy to the case. The party in offering them in evidence affirmed their genuineness and cannot afterwards cast a doubt upon them.
3. Where the genuineness of handwriting is in dispute, the testimony of experts, who have never seen the party write whose writing it is alleged to be, is competent when based upon a comparison, made before the jury, of the disputed writing with admitted writings.
4. Documents, otherwise irrelevant, cannot be admitted in evidence, for the purpose of comparison with disputed writings.

5. In an action against the endorser of a promissory note, where the defendant, after introducing evidence to show that the endorsement is a forgery, introduces further expert evidence to show that the endorsement is in the same handwriting as the body of the note, namely that of the maker, it is error to refuse to allow an expert witness offered by plaintiff in rebuttal to state that in his opinion the disputed endorsement is not in the same handwriting as certain admitted writings of the maker, already in evidence, and to refuse to allow them to be submitted to the jury for comparison.

6. The admissions or recitals of facts made by a party in the pleadings of another and different case are not, generally, competent evidence; nor are the verbal admissions of counsel, made in the trial of another cause, admissible against their client.

7. And such recitals and admissions will not operate by way of estoppel.

No. 110.  Submitted May 10, 1894.  Decided October 1, 1894.

HEARING on a bill of exceptions by the plaintiff in an action on a promissory note.  *Judgment reversed.*

The COURT in its opinion stated the case as follows:

This is an action at law instituted August 4, 1881, in the Supreme Court of the District of Columbia, by Benjamin U. Keyser, receiver of the German-American National Bank of Washington, for the use of the Chemical National Bank of New York, against Thomas L. Hume, in his own right, and Thomas L. Hume and Mary E. Pickrell, as executors of the last will of A. H. Pickrell, deceased.  The declaration is upon a note for the sum of $7,666.36, made by Thomas L. Hume, September 11, 1878, payable to the order of A. H. Pickrell, at the German-American National Bank, ninety days after date, with interest at eight per cent. per annum, and endorsed by said A. H. Pickrell.

The executors filed pleas of *nil debet* and *nul tiel* corporation.  Thomas L. Hume died October 28, 1881, and his administrators were regularly made parties defendant in his stead.  To an amended declaration of the plaintiff, Mary E. Pickrell, as surviving executrix, on September 16, 1886, filed pleas to the effect that A. H. Pickrell was never indebted as alleged; that he never promised as alleged;

that there was no such corporation as the German-American National Bank; that there had been no notice of dishonor, etc.; that the action was barred by limitation; and that plaintiff had no right to bring the suit.

The administrators of Hume filed a formal plea, denying the indebtedness, promise to pay, etc. Joinder of issue was had October 8, 1886. June 29, 1891, the death of B. U. Keyser was suggested, and his successor as receiver, W. B. Thompson, was substituted as plaintiff, and has since prosecuted the suit.

The case has been on trial six times in the court below, though this is the first appeal. Once there was a mistrial on account of the illness of the trial judge, and once again by reason of the failure of the jury to agree upon a verdict. The defendant Pickrell has obtained three verdicts and the plaintiff one. The last trial, had May 26, 1892, resulted in a verdict and judgment for the executrix of Pickrell's estate, from which the plaintiff has prosecuted this appeal.

A. H. Pickrell died May 2, 1879, and his will, in which Thomas L. Hume and Mary E. Pickrell were named as executors, was made August 23, 1872.

Upon the trial, and before offering the note and its endorsement, plaintiff offered a number of witnesses, who, having qualified to testify to the handwriting of Pickrell, examined the endorsement and pronounced it his genuine signature. There was no witness who saw him endorse the note. Plaintiff further introduced evidence tending to show that the original indebtedness of Hume to the bank commenced before the year 1875, and that Pickrell, who was his father-in-law, was connected therewith; that the debt had been reduced and renewed from time to time; that the note in suit was one of a succession of renewals of a former note of Hume that had been endorsed by Pickrell; and that once or twice former notes with Pickrell's endorsement had been protested. Plaintiff also introduced evidence tending to show that Pickrell had been a constant endorser

of Hume's paper, to one other person at least, from September 1878, to as late as January 28, 1879.

Plaintiff next read in evidence certain correspondence between Prentiss, the cashier of the German-American Bank, and Thomas L. Hume, concerning his indebtedness. Prentiss wrote on January 18, 1875, to Hume, saying his loan had been extended to May 24, at which time he would be expected to pay $10,000 of it, or furnish additional collateral security to the amount of $13,000, secured by real estate. The bank was not then a national bank, but became one later. June 28, 1875, Hume wrote Prentiss enclosing collateral secured by trust deed. In the second letter, which is without date, he enclosed " a new collateral note to replace the one that was inadvertently protested, and also the protest fees."

The third note, dated December 21, 1876, inclosed a new note and asked the return of the old one. These three letters were marked, and are referred to throughout the case as W. B. T. Nos. 1, 2, 3.

Plaintiff also exhibited three letters as having been written and signed by A. H. Pickrell, which, however, had no relation to the transaction in question, and were not addressed to anyone connected therewith. These are called in the record W. B. T. 4, 5, 6.

Defendant first introduced a number of witnesses, though not so many as plaintiff, who, having qualified themselves to speak, expressed the opinion that the endorsement was not in the handwriting of Pickrell. She also offered two experts, Ames and Carvalho, who were permitted to examine the signature to the will and to letters W. B. T. 4, 5, and 6, and compare them with the endorsement, which latter they pronounced a forgery. Defendant also proved that the body of the note was in the handwriting of Thomas L. Hume. One of the experts—Mr. Ames—expressed the opinion that the endorsement of Pickrell's name was in the same hand-

writing as the body of the note, though made with different ink.

On the cross-examination of some of defendant's witnesses, plaintiff exhibited to them several paper writings purporting to have been signed by A. H. Pickrell, which they pronounced genuine. These are designated in the record as W. B. T. 14, 15, 16, 17, 18, 19.

These signatures were also exhibited to the experts, Ames and Carvalho, and used in their cross-examination with a view to weaken the weight of their evidence. Plaintiff had previously proved that the note in suit had been protested December 13, 1878, and notice thereof left at the office of A. H. Pickrell in Georgetown. Some evidence had also been introduced by defendant, tending to show that Pickrell had been in bad health about that time and later, and generally absent from his office; and this had been rebutted on behalf of plaintiff by evidence to the contrary.

Plaintiff then offered the papers, W. B. T. 14, 15, 16, 17, 18, and 19, in evidence for the purpose of showing by their dates that A. H. Pickrell had been at his office and attending to his business just before and after the notice of protest was left for him. The evidence was rejected. Plaintiff then re-offered them as part of the cross-examination of defendant's witnesses, to whom they had been exhibited, and to rebut their testimony concerning the peculiarity of Pickrell's signature. They were then admitted, the court saying: "As a part of the cross-examination, to enlighten that and show the jury what the witnesses were talking about, these manual things are to be received, probably not for the purpose of comparison."

Plaintiff then introduced an expert as a witness—Mr. Hay—and submitted to him the Hume letters W. B. T. 1, 2, 3, offering to prove by comparison that they were not in the same handwriting as the signature of A. H. Pickrell, as endorsed on the note. They were also offered to the jury

for comparison. Upon objection of the defendant, the court refused the offer. Plaintiff next offered the papers marked W. B. T. 14, 15, 16, 17, 18, and 19, to the witness and to the jury for comparison with the endorsed signature, which was also denied upon the objection of the defendant.

*Mr. Leigh Robinson* and *Mr. Conway Robinson* for the plaintiff in error.

*Mr. Enoch Totten* and *Messrs. Gordon & Gordon* for the defendant in error.

Mr. Justice SHEPARD delivered the opinion of the Court:

1. The controverted fact of this case is the genuineness of A. H. Pickrell's endorsement. Its determination was submitted to the jury upon a mass of conflicting evidence, and their verdict precludes inquiry into the relative weight thereof. The judgment entered on this verdict must therefore stand, unless a material error can be shown in some ruling of the court made during the progress of the trial and duly excepted to.

2. The first of the exceptions questions the right of the defendant to introduce evidence to disprove the genuineness of the endorsed signature, under the plea of *non assumpsit*. The contention is that the execution of an instrument of the character of that sued on must be specially denied by plea in order to put it in issue. We cannot subscribe to this view. By the rule of the common law (in which no change has been made by statute or established rule of court in the District of Columbia) the general issue of *non assumpsit* not only puts the plaintiff upon proof of all his necessary allegations, but also lets in proof of all the ordinary defenses to the action. 2 Greenleaf on Ev., Sec. 6 ; Id., Sec. 135; 1 Chitty Pl., *p. 476 *et seq.* This rule was in force in England until changed by rule of court made in 1834, by authority of a statute enacted the same year. Whilst a like change may be desirable here, it must await a similar authorization.

Under the pleadings then, as they stood, we must hold that it was incumbent upon the plaintiff to prove the execution of the note and endorsement in some of the modes known to the common law. Indeed, the plaintiff recognized this to be the proper practice, for, as we have seen, before offering the note he introduced evidence tending to prove its execution by both maker and endorser. The evidence objected to was in direct rebuttal of the plaintiff's own testimony.

3. Succeeding assignments of error, based on formal exceptions, present some interesting and rather novel phases of that much argued rule of evidence respecting the proof of disputed handwriting by comparison. Upon few questions arising in the law of evidence has there been so much discussion, or so great contrariety of opinion among the courts of this country and of England. The first of these points arose as follows: As will be seen in the preliminary statement, plaintiff offered evidence of the genuineness of the endorsement, consisting of the opinions of witnesses more or less familiar with the handwriting of Pickrell, and then exhibited the letters written and signed by him, called W. B. T. 4, 5, 6. It appears that the will of Pickrell was in the record. How it came there is not apparent, though it would seem to have been brought in by plaintiff for some purpose or other on a former trial. Over plaintiff's objection defendant was permitted to exhibit the signatures of Pickrell to this will and to the letters W. B. T. 4, 5, 6, to the jury for comparison with the disputed signature, and in addition thereto to offer proof through the opinions of experts formed from a like comparison made in the presence of the jury. The objection is that these writings were not in evidence in support of, or relevant to, any issue of the cause, and therefore were not admissible or capable of being used as standards of comparison. The recognized rule of the common law, which prevailed in England until changed by statute in some

important respects, is thus tersely stated in the headnotes of the reported case of *Doe dem. Perry* v. *Newton*, 5 Ad. & Ell. 514: " On a question as to the genuineness of handwriting the jury may compare the document with authentic writings of the party to whom it is ascribed, if such writings are in evidence for other purposes of the cause, but not else." See also *Griffits* v. *Ivery*, 11 Ad. & Ell. 322 ; *Hickory* v. *U. S.*, 151 U. S. 303 ; *Williams* v. *Conger*, 125 U. S. 397.

The reasons usually assigned for adherence to this strict rule may be substantially stated as follows : 1. The admission of papers, otherwise irrelevant, would probably raise collateral issues respecting the genuineness of the signatures thereto which might be spun out indefinitely and to the utter confusion of the jury. 2. Opportunity might be given to the party offering the papers to obtain advantage by making an unfair selection of the test signatures. These reasons should be borne in mind in the application of the rule to the point as presented in this record. It may be granted that the will of Pickrell was not, strictly speaking, a paper in evidence in the case, there being no denial of the probate and letters testamentary as alleged. Had there been such denial, the plaintiff would have been compelled to put the will in evidence. Though answering no practical purpose as evidence, the will was, nevertheless, the foundation of the plaintiff's right to enforce the obligation of the endorsement against the executor named therein. It appears as the only will executed by Pickrell, and having sued defendant as executor thereof, the plaintiff is necessarily estopped to deny the genuineness of the signature. The admitted authenticity of this will and the propriety of its use as a test is within the principle of *Williams* v. *Conger*, 125 U. S. 397, and it is clearly as much a paper in the cause and as pertinent to its issues as the power of attorney by which the claimant authorized the institution of his suit in *Moore* v. *U. S.*, 91 U. S. 270.

The rule is plainer still as regards the use made of letters

W. B. T., 4, 5, 6. It is true that they had no relevancy to the case whatever, and had they been objected to by defendant, must necessarily have been excluded. But they were first exhibited by the plaintiff himself. By so doing he affirmed their genuineness in the most solemn manner and cannot now be heard to cast doubt upon it. *Smyth* v. *Caswell*, 67 Tex. 567.

The relation of the plaintiff to these several writings was clearly such as to prevent the possibility of a collateral issue as to their genuineness, and at the same time preclude the idea of unfairness in their selection as tests for the comparison. Therefore, even if the admission of these test signatures might not have been within the letter of the aforestated rule, it was clearly within the spirit thereof, and and the court did not err in its ruling.

4. Granting that the signatures to these papers were properly permitted to go to the jury for comparison with the one in dispute, it is contended, on another exception, that the court erred in permitting the experts, who had never seen Pickrell write, to make the same comparison in the presence of the jury, and to testify therefrom that the endorsed signature was not genuine. This is another branch of the general question upon which learned courts have greatly differed. In England it seems to have been early held that such evidence was inadmissible, save in the case of ancient instruments. *Gurney* v. *Langlands*, 5 B. & A. 330. The testimony of experts had been rejected on the trial, and the rule for a new trial was refused for the reason that such evidence is of no weight or value. Mr. Best, whose discussion of the whole question of comparison of handwriting is clear and critical, after an analysis of the above case says of expert evidence:

"Its admissibility seems to be recognized in the more recent cases of the *Fitzwalter Peerage* (10 C. & F. 198), the *Tracy Peerage* (Id. 154), and in *Newton* v. *Ricketts* (9 H. L. Ca. 262), and according to the present practice it is gen-

erally received without objection." Best, Pr. of Ev. 253. Wharton says: "When comparison of hands is permitted, an expert can be called to make such comparison," and cites a great many authorities in support of his statement. 1 Whart. Ev., Sec. 719.   Greenleaf says also: "Where other writings, admitted to be genuine, are already in the case, the comparison may be made by the jury with or without the aid of experts." 1 Gr. Ev., Sec. 578.

The rule and exceptions thereto, as established by decision and statute in the several States of the Union are concisely stated in the excellent treatise of Professor Rodgers upon Expert Testimony (Sec. 134 *et seq.*). From this review it appears that the large majority of the courts agree with the text writers quoted above.

The rule has not been definitely settled in the Supreme Court of the United States. True, it has been said that, save in the case of an ancient writing, "evidence by comparison of hands is not admissible where the witness has no previous knowledge of the handwriting, but is called upon to testify merely from a comparison of hands." *Strother* v. *Lucas*, 6 Pet. 763. It does not appear from the opinion in that case that the witnesses offered were in fact experts at all, and the question was one of no importance whatever, because, as the court observed, living witnesses to the signature had been examined, and "besides the deed was received and read in evidence, and the plaintiff had the full benefit of it." Id., 767.

In *Rogers* v. *Ritter*, 12 Wall. 317, the general doctrine of *Strother* v. *Lucas* was approved, but witnesses who had never seen Sanchez (whose signature was in dispute) write, were nevertheless permitted to testify to the genuineness of his signature from knowledge acquired by them through familiarity with his writings contained in the Mexican archives that had passed to and been preserved in the office of the recorder and surveyor general at San Francisco after the change of government in California.

In *Hickory* v. *U. S.*, 151 U. S. 303, experts had been permitted to compare the writings offered in evidence, without objection on the trial, hence there was no decision on this point. The case turned on the right of the defendant to prepare a paper during the trial and submit it for comparison with the disputed writing alleged to be his. It was held that a standard prepared for the purpose could not be exhibited. Referring to the general rule of admission of handwriting, the chief justice, who delivered the opinion, says the comparison may be made by the jury " with or without the aid of witnesses," and cites 1 Gr. Ev., Sec. 578, where the exact expression is, " with or without experts." We think, however, that no significance can be attached to the mere change of words. Notwithstanding the frequent severe criticism of expert testimony, the tendency in modern practice has constantly been towards the extension of the field of its operations. In many instances the testimony of experts is indispensable. Unquestionably, the integrity of such testimony is often subject to grave doubt, and will be as long as the expert is not called by the court, or by the public authority as an unbiased and impartial adviser in the case, but is left to the selection of the interested parties who pay his fees, wherefore he too frequently takes on the character of a professional adviser and advocate of the party in whose interest he appears. The objections urged, however, may all be classified as affecting the credibility and weight of the evidence rather than its competency, and as such may be left to the consideration of the jury.

The testimony of all witnesses to handwriting who did not actually see the writing made is from comparison. The witness who has been in correspondence with the party, or who has become familiar with his writing in the public offices, or who has even seen him write his name one time only, is generally held to be competent, and yet he compares the writing shown him with one borne in his mind. The

expert compares the same writing with others of undoubted authenticity and fairness of selection, and with time to study them carefully, expresses his opinion. With these signatures in juxtaposition he can be cross-examined and made to demonstrate his conclusions in the presence of the jury, who also make the comparison and test the soundness of his opinions, and the reasons therefor by their own perceptions. We are unable to see why the testimony of each witness is not of the same nature, nor why the examplar in the mind of a witness should be regarded as more reliable than one presented to the expert's eye and at the same time to the eye of the jury. In the absence of an express decision to the contrary by the court of last resort we must hold that the evidence was admissible.

5. It follows from what has been said respecting the admissibility of the signature to the will and to the letters marked W. B. T. 4, 5, 6, that the court did not err in excluding the papers marked W. B. T: 14, 15, 16, 17, 18, 19, as standards of comparison. They were not evidence in the cause, though the court allowed them to be used in the cross-examination of defendant's experts, to which it seems there had been no objection. They had no relevancy to the matters involved in the litigation and occupied no relation thereto which could possibly have estopped the defendant to raise a collateral issue as to the genuineness of each one as offered.

6. This brings us to the consideration of the last of the series of exceptions taken to the rulings of the court on the admissibility of handwriting, for purpose of comparison. Under the plea of *non assumpsit*, as we have held above, it was necessary for the plaintiff to prove the execution of the note by the maker also. In the course of his proof plaintiff introduced certain evidence tending to show the origin of the indebtedness of Hume to the bank, its reduction and renewal from time to time during several years, with the note of Hume payable to the order of Pickrell, with the latter's

4 Ct. App.—14

name endorsed, and the possible knowledge by him thereof. The three letters of Hume to the cashier of the bank, marked W. B. T. 1, 2, 3, referring to the transaction in some of its earlier stages, were identified and read without objection. This was all admissible evidence for the purpose of proving the existence of the debt, the genuineness of Hume's own signature, and as furnishing a circumstance for the jury to consider with other testimony in determining the genuineness of Pickrell's endorsement.

On behalf of the defendant it was shown, by the opinion of witnesses, that the handwriting in the body of the note was that of Hume. Subsequently defendant submitted the body of the note and the endorsement thereon to the examination of the witness Ames (one of her experts) who, having made the comparison in the presence of the jury, expressed the opinion that both were in the same handwriting, though executed with different ink.

The importance of this testimony is manifest. It is necessarily added weight to the opinion expressed by the same witness, and others, that the signature was not in the handwriting of Pickrell. There was not a shadow of suspicion that the officers of the bank had forged the endorsement, consequently the only person who had any motive therefor was the maker of the note, who thereby secured another extension of his debt. He lived some three years after the maturity of the note, and for several months after the suit was instituted. During this time no suspicion seems to have been cast upon the genuineness of the signature ; and it does not seem indeed, to have been questioned until some years after his death. No witness saw the preparation, execution or endorsement of the note.

In order to rebut and counteract the damaging effect of this testimony the plaintiff introduced an expert—Mr. E. B. Hay—as a witness, and submitting the letters W. B. T. 1, 2, 3, to him for comparison with the endorsement, proposed to elicit the opinion that they were not in the same handwrit-

ing, and to submit them to the jury for comparison. On objection of defendant this was refused, and plaintiff excepted.

It can readily be seen that if this fact of actual difference between the handwriting of Hume and the disputed signature of Pickrell could have been established to the satisfaction of the jury, it might have had great weight in the determination of the controverted fact.

The handwriting of Hume having been made an issue by the defendant's evidence, we think these letters became proper standards of comparison and foundations for the opinion of the expert, within the scope of the rule of evidence recognized above. They were already in evidence for a legitimate purpose, without objection or challenge as to their genuineness, and subject to the examination of the jury. Their authenticity was established also by the proof that they were part and parcel of the transaction out of which the litigation grew, being communications between Hume and the cashier of the bank relating thereto, which had been acted upon at the time. 1 Greenleaf Ev., Sec. 577. No collateral issue as to their genuineness was or could well have been raised. They were free from suspicion of unfairness in their selection as tests, and their use could hardly have prejudiced the defendant in the nature of surprise.

The question as here presented is, in some respects, novel and difficult of right solution; but, after much consideration, we cannot avoid the conclusion that the comparison of the writings and the opinion of the witness thereon ought to have been allowed to go to the jury, and that for the error of the court therein the judgment ought to be reversed and a new trial awarded.

7. Some other and minor questions are presented in the bill of exceptions, which, as they may arise on another trial, will be briefly noticed.

It was not error to exclude either the record in the case of *William B. Bowie* v. *Mary E. Pickrell*, executrix, and

Annie G. Hume, devisee, under the will of A. H. Pickrell, deceased, or the admission of their counsel made on the examination of witnesses therein, that the signatures of maker and endorser of this note were genuine. The admissions or recitals of facts made by a party in the pleading in another and different case are generally held not to be competent evidence. *Davis* v. *Gallagher*, 124 N. Y. 487; *Dennie* v. *Williams*, 135 Mass. 28. This rule, like most others, has its exceptions, but this case does not come within them. Still less are the verbal admissions of counsel, made on the trial of another cause, admissible against their client.

We may add also that there is no element of estoppel, as claimed, in such pleadings, or statements of counsel on the trial of another and wholly distinct case. Nor is there any estoppel in the mere delay of the defendant to raise the question of the genuineness of the endorsement, and the court did not err in so holding. Some exceptions were taken and have been here urged to the charge of the court; but after what has been said we think it unnecessary to discuss them.

We have confined our consideration to the points only which have been assigned as error and urged on the hearing, giving no attention to questions of practice which have heretofore been decided by the General Term and treated as settled thereby.

For the error pointed out, *the judgment must be reversed, with costs to the appellant, and the cause remanded; and it is so ordered.*