### WILSON v. PANNELL.

Opinion delivered May 23, 1921.

1. VENDOR AND PURCHASER—INNOCENT PURCHASER.—One who purchased a lot from a husband, having knowledge that he had abandoned his wife twenty-three years previously, that she had had actual possession of the lot during such abandonment, had paid the taxes and a personal indebtedness of the husband to prevent his creditors from seizing the lot, is not an innocent purchaser, and took only such title as the husband could have asserted against the wife.

2. EQUITY—LACHES.—Under the rule that equity aids the vigilant, not those who slumber on their rights, a husband who abandoned his wife and left her in actual possession of a lot for twenty-three years, and permitted her to pay all the taxes and assessments and a considerable amount of his personal indebtedness to protect the lot from his creditors, is not in position to ask a court of equity to clear his title as against her.

3. EQUITY—LACHES.—Laches may be pleaded in a suit in equity brought to establish a purely legal right.

4. QUIETING TITLE—NECESSARY PARTIES.—In a suit to quiet the title to a lot, where defendant by cross-bill set up estoppel and asked for general relief against the plaintiff, her husband's grantee, and moved to make her husband a party, such motion being overruled, it was error to quiet her title.

Appeal from Clark Chancery Court; *James D. Shaw,* Chancellor; affirmed.

*John H. Crawford, Dwight H. Crawford* and *T. D. Crawford,* for appellant.

1. The court erred in dismissing the complaint for want of equity. There was no abandonment of the lot

by Pannell and no proof of an intention to abandon the property. 101 Atl. 305.

2.   Nor was he guilty of laches in allowing his family to receive the rents and profits and pay the taxes. 9 Wheaton 241, 288; 126 Ark. 93; 103 *Id.* 251; 140 *Id.* 100; 99 *Id.* 500.

3.   There is no presumption of a lost grant in this case, as Mrs. Pannell testifies that she never had any deed and that the only title she had was possession of the deed to Pannell from his grantor. She holds the land merely by virtue of her marital rights.

4.   There was no plea of estoppel in this case and that defense was waived. 21 C. J. 1246, § 257; 155 Ala. 648; 12 Ark. 769. Nor was there any equitable estoppel. 99 Ark. 260; 97 *Id.* 43.

5.   The chancellor erred in his conclusion on the issue of *adverse possession.* In the absence of evidence to the contrary, the presumption is that the possession is in accord with the legal title. 89 Ark. 19; 23 *Id.* 735; 43 *Id.* 469-485. The rightful owner is deemed to be in possession until he is ousted or disseized. 57 Ark. 523. Permissive possession is not such hostile possession as will start the statute of limitation. 84 Ark. 140; 133 *Id.* 589; 130 *Id.* 28; 114 *Id.* 376; 55 *Id.* 59.

Where possession is originally taken and held under the true owner, a clear, positive and continued disclaimer and disavowal of title and assertion of adverse right brought home to the true owner are indispensable before the statute of limitations begins to run. 2 C. J 134; *Ib.* 75. The doctrine of adverse possession is to be taken strictly. It can not be made out by inference or implication. The presumptions are all in favor of the true owner, and the proof to establish adverse possession must be clear, strict and unequivocal. It must be visible, open, exclusive and hostile and continue for twenty years. The exclusive possession by a husband of a wife's lands is not necessarily adverse. 234 Ill. 240. It results from the community of possession of husband and wife that neither can obtain title by adverse possession as

against the other by mere occupancy.    Peck on Dom. Rel., § 50; Schouler on Mar. and Div., p. 223.

Title can not be required by one spouse against the other by adverse possession.   195 Ala. 457; 39 S. W. 48; 215 Ill. 552; 67 N. J. Eq. 165; 105 Ind. 410; 88 S. C. 184; 57 Am. St. 521; 81 Wis. 151; 37 Ala. 536; 179 Pa. 89; 128 N. Y. S. 772; 116 S. W. 43; 94 N. W. 332; 86 Ark. 448.   The cases cited for appellee below (29 Pac. 1117 and 110 Pac. 313) do not apply, as the facts are entirely different from this case.   See 76 S. W. 790-3; 43 Upper Can. Q. B. 406; 3 Can. App. Rep. 577; *Blair* v. *Johnson,* 215 Ill. 552.   The payment of taxes and assessment in the wife's name were not necessarily open and notorious and not hostile nor adverse.   224 S. W. 629.   Payment of taxes without color of title, no matter how long, does not start the statute of limitations.   45 Ark. 81.

6.   Appellant was an innocent purchaser and paid valuable consideration and acquired the legal title.

*J. E. Callaway,* for appellee.

Mrs. Pannell was in possession when this suit was instituted, and it should have been at law, ejectment. But both parties acquiesced to a trial, and appellant must come into court with clean hands.   He did not attempt to bring W. G. Pannell before the court to explain his attitude.   Counsel cite 2 C. J. 29 as being against the presumption of a lost grant, but the chancellor did not base his opinion on that case.     135 Ark. 369; 114 *Id.* 65. There were other stronger equities, notwithstanding the courts generally hold that after twenty years' peaceable possession a lost grant will be presumed.   2 C. J. 292.

2.   There is no error in the chancellor's findings as to estoppel, as collusion is shown by the evidence.   21 C. J., p. 1245, § 254.   Appellant's purchase was in fraud of appellee's rights, and he paid an inadequate price.   A wife can acquire title to a husband's land by continuous, exclusive, adverse possession.   158 Cal. 149; 110 Pac. 313; 29 Pac. 1117.   See, also, 132 *Id.* 291.   The husband had abandoned the lot, and appellee acquired title by

adverse possession, and the chancellor so found, and justice and equity have been done.

HUMPHREYS, J. Appellant instituted suit against appellees in the Clark Chancery Court, to quiet his title to lot 12 in block 24 in Browning's survey of Arkadelphia, alleging that he was the owner of the legal title, and that appellees claimed title thereto without right, and that their claims cast a cloud upon his title.

One of the appellees, Arkadelphia Motor Company, answered that it was in possession under a lease from its coappellee, Mrs. S. A. Pannell. The other appellee, Mrs. S. A. Pannell, answered, setting up, among other defenses, facts, which, if true, constituted an estoppel on the part of appellant to assert his title in a court of equity.

The cause proceeded to a hearing upon the pleadings and evidence, which resulted in a decree dismissing appellant's bill for the want of equity, from which decree an appeal has been duly prosecuted to this court, and the cause is here for trial *de novo*.

There is little or no dispute in the testimony, and, in substance, the record reflects that, in the year 1897, the then owner of said lot, who is the husband of appellee, became enamoured of another woman and abandoned his family, consisting of his wife and three small boys, and moved with his paramour to Oklahoma City, where they have since lived in adultery; that, after that time, he never contributed to the support of his family or communicated with his lawful wife, the appellee herein; that a short time after the abandonment he returned, disposed of all his assets, except the lot in question, and appropriated the proceeds thereof to his own use, leaving unpaid debts to the amount of $800 or $1,000; that, prior to the abandonment, he had run a blacksmith shop upon the lot in question, which had a high fence around it; that, immediately after the abandonment, his wife, Mrs. Pannell, took possession of the lot and shop in question and, through her boys, conducted the blacksmith shop for fifteen years; that the city compelled her to

move the shop off the lot, after which time she rented it
for a small rental to other parties, and, at the time of
the institution of the suit, had leased it to her co-appellee,
Arkadelphia Motor Company, who was paying her a
small rental therefor; that, in the year 1899 she assessed
the lot in her own name for the purposes of taxation and
thereafter paid the State, county, city and special im-
provement taxes upon said lot in the sum of about $200,
and, out of her individual earnings, paid the indebted-
ness of her husband to the amount of about $1,000, in or-
der to prevent the lot from being sold to satisfy his
debts; that appellant was cognizant of the abandonment
and familiar with the lot and uses to which it had been
put by the appellee, Mrs. S. A. Pannell, having seen it
every day, and sometimes oftener, during the entire pe-
riod of abandonment; that J. J. Pannell, a son of the
appellee, Mrs. S. A. Pannell, had often talked to appel-
lant concerning the affairs of Mrs. Pannell and W. G.
Pannell, and had been told that the property belonged
to said appellee; that, about thirty days before appel-
lant purchased the property from W. G. Pannell, he had
inquired of J. J. Pannell whether the lot was for sale,
and was informed that it belonged to his mother and
that she did not want to sell it; that, on the 6th day of
September, 1920, appellant purchased the lot in question
and obtained a quitclaim deed thereto from W. G. Pan-
nell for $500; that, according to the opinion of various
witnesses, the property ranged in value from $1,500 to
$3,000 at the time he purchased it.

Appellant insists that the court erred in dismissing
his bill for want of equity. This must depend upon
whether his grantor, W. G. Pannell, was in position to
assert his legal title as against the equitable rights of
Mrs. S. A. Pannell in a court of equity, for appellant
can not be regarded as an innocent purchaser, as the
record reflects that he had a personal acquaintance with
his grantor, W. G. Pannell, and the appellee, Mrs. S. A.
Pannell, and understood that they had lived apart for
twenty-three years; that said appellee had been in the

actual possession of the lot during that period, paying taxes thereon and claiming ownership thereto. As appellant was in possession of facts sufficient to put a reasonable man upon inquiry as to the exact situation, he merely succeeded to whatever rights and equities his grantor possessed. W. G. Pannell, appellant's grantor, abandoned his family, consisting of his wife and three small boys, about twenty three years before the institution of this suit, and showed no further interest in them. At the time of his departure, he sold his personal property and took the proceeds with him, leaving an indebtedness of between $800 and $1,000 unpaid. Mrs. S. A. Pannell, thus abandoned, assumed the burden of the support of herself, the children, and the payment of this large indebtedness. In order to meet these burdens, she took immediate possession of the lot in question, and continued the blacksmith business, with the aid of her children, which had been theretofore conducted by her husband. During the entire period of abandonment, she paid the taxes upon the property, amounting to about $200, and liquidated an indebtedness against her husband, which, together with reasonable interest thereon, exceeded, perhaps, the value of the property at the time her husband sold it to appellant. During all this time, the property was assessed in her name, and she openly asserted ownership thereto. Mrs. Pannell testified that she paid the personal indebtedness of her husband to prevent his creditors from taking the lot. In saving the property from his creditors and from sale for taxes, she expended large sums of money. In that way, this delay in asserting his right to the lot has worked disadvantage to said appellee. This unconscientious conduct on the part of appellant's grantor, in the language of Mr. Pomeroy (Pomeroy's Equity Jurisprudence, vol. 1, 4 ed., § 404), would "repel him from the forum whose very foundation is good conscience." To uphold the right of appellant's grantor to sell the lot under these circumstances would operate as a fraud upon the rights of appellee and calls for the application of the equitable doctrine announced

above. Appellant insists, however, that the doctrine of laches is not applicable where one is attempting to enforce a legal right in a court of equity. This court applied the doctrine of laches in the case of *Osceola Land Co.* v. *Henderson*, 81 Ark. 432, in which it attempted to assert its legal title to 1280 acres of land in a court of equity by seeking to remove a cloud upon its title. In doing so, this court reiterated the doctrine announced by Lord Camden in *Smith* v. *Clay*, 3 Brown, Ch., 638, in the following language: "Nothing can call forth this court into activity but conscience, good faith and reasonable diligence." This court also took occasion to reiterate the following maxim of law: "Equity aids the vigilant, not those who slumber on their rights." The following cases also support the application of the doctrine of laches where equitable remedies were invoked in the assertion of purely legal rights. *Clay* v. *Bilby*, 72 Ark. 101; *Turner* v. *Burke*, 81 Ark. 352; *Craig* v. *Hedges*, 90 Ark. 430; *Rachels* v. *Stecher Cooperage Co.*, 95 Ark. 6; *Burbridge* v. *Wilson*, 99 Ark. 455. We think the facts in this case bring it within the rule announced in these cases. Appellee prayed in the alternative that, in the event appellant's bill was not dismissed, her husband, W. G. Pannell, be made a party, and that she be decreed a reasonable sum against him for maintenance and support, together with a reasonable attorney's fee, and that a lien be declared against the lot in question for support and alimony and for taxes paid upon said lot, and for the sum of $1,000 paid by appellee upon his debts, and that the lot be sold to satisfy the lien. She also prayed for general relief. The motion to make her husband, W. G. Pannell, a party was overruled. No answer was filed by appellant to appellee's cross-bill. Under the issues joined, it was technical error to render a decree quieting the title to said lot in appellee, Mrs. S. A. Pannell, as against appellant. The decree will therefore be modified in that respect, but will be affirmed in other respects.

Mr. Justice HART concurs in part and dissents in part; Mr. Justice SMITH dissents.

HART, J. (dissenting in part). The facts necessary to a proper understanding of the case are these. W. G. Pannell and his wife lived in Arkadelphia, Arkansas, and in 1897, without cause, the husband deserted his wife and their three minor children. Since that time he has absented himself from her and the children. When he deserted her, he converted all of his available assets into cash and carried away about $1,000 in money. He left debts to the extent of $1,000. He also owned the lot in controversy on which was located a blacksmith's shop. To prevent the lot from being sold for her husband's debts, Mrs. Pannell paid off his debts and took possession of the lot. She has had possession of it ever since. When he deserted his wife, W. G. Pannell left the State, and has contributed nothing to the support of his family since. In September, 1920, Pannell temporarily returned to Arkadelphia and sold the lot to Thos. N. Wilson for $500. He executed a quitclaim deed to Wilson. Wilson knew that Pannell and his wife had separated and were not living together when he purchased the lot. It is also inferable that he knew that Pannell had deserted her and the children. When Pannell deserted his wife, he went to Oklahoma City with another woman. The present value of the lot is estimated from $1,500 to $3,000. The lot in controversy is located on one of the business streets of Arkadelphia, and Wilson knew that Mrs. Pannell was in possession of it when he bought it. Wilson brought this suit against Mrs. Pannell, alleging that she was claiming title to the lot without right; that her claim constituted a cloud upon his title, and asked that his title to the lot be quieted.

Mrs. Pannell filed an answer and cross-complaint. She set up substantially the facts stated above and asked that a lien be declared against the lot for her support and alimony, including the taxes paid by her and the sum of $1,000 paid by her on her husband's debts, and that the lot be sold to satisfy her lien.

The court found the issues in favor of Mrs. Pannell. It was decreed that the plaintiff's complaint be dismissed for want of equity, and there was a decree in her favor quieting and confirming the title in her.

I am of. the opinion that the court was right in dismissing the complaint of the plaintiff, but also believe that its decree was too broad with respect to the cross-complaint. The chancellor should have allowed her the relief prayed for in her cross-complaint. Under the facts stated the wife had a clear-cut case for alimony and also the right of reimbursement for the payment of her husband's debts.

Of course, a wife does not ordinarily stand in the relation of a creditor to her husband, and therefore can not set aside a conveyance made by him of his property as a fraud against his creditors. But, when the interest in the subject changes, a different rule prevails. When the husband wilfully deserts his wife and minor children, the wife has a right to institute suit for alimony. *Wood* v. *Wood,* 54 Ark. 172, and *Horton* v. *Horton,* 75 Ark. 22.

Upon the institution of such suit the wife becomes a creditor of her husband. The wife as a special creditor of her husband is within the protection of the statute against fraudulent conveyance and may proceed according to its provisions. On a proper showing of the fraud the conveyance will be set aside and the property of the husband will be declared subject to the decree for maintenance, or alimony. Nelson on Divorce and Separation, vol. 2, § 938.

In 19 C. J., § 734, p. 318, it is said that a conveyance made by a husband in anticipation of his wife's suit for divorce and to prevent her from recovering alimony is fraudulent and may be set aside unless the purchaser take without notice and for value. Where a husband wilfully deserts his wife and refuses to support her and his minor children, he knows she is likely to become his creditor with the right to attack a fraudulent convey-

ance of his property as being against her marital interests.

In *Harrington* v. *Johnson,* 44 Pac. 368, the Court of Appeals of Colorado said that on this point the better authorities agree on the rule just announced, and several cases are cited in support of the doctrine.

In *De Ruiter* v. *De Ruiter,* 62 N. E. (Ind.) 100, the appellate court of Indiana, in a suit by the wife for divorce and to recover alimony, held that she is a present and continuous creditor of her husband, and that on a proper showing of fraud the husband's conveyance of his real property will be set aside. According to the principles anounced in that case the wife may be either an actual creditor or a subsequent creditor, or holder of equities which afterward ripen into a claim. In the instant case the husband made the conveyance after he had deserted his wife. He had no other property in the State. The lot in controversy was not worth more than $3,000, and it was the only property out of which she could enforce her claim for alimony and for reimbursement for the payment of her husband's debts. She had a right to pay his debts to prevent the lot in controversy from being sold at a sacrifice for the payment thereof and thus deprive her of her lien on it for support and maintenance.

Under our statute it is not necessary to obtain judgment at law in order to maintain a suit to set aside a fraudulent conveyance. Crawford & Moses' Digest, § 4880. Section 4874 provides that every conveyance of real estate made to defraud creditors shall be void as against creditors and purchasers prior and subsequent.

The record shows that Wilson knew of the separation of Pannell and his wife and that the husband had left the State and was not contributing anything to the support of his wife and minor children. Therefore, he was not an innocent purchaser and stood in no better attitude in this case than Pannell.

Hence the court properly dismissed his suit for want of equity.

The appeal of Wilson brought up the whole case. The right of appellee to have Wilson's complaint dismissed depended upon her right to alimony and to be reimbursed for the $1,000 paid on her husband's debts. Hence the court should have heard her complaint and made her husband a party so that the rights of all should be settled in one suit.

On cross-complaint the court should have decreed that the conveyance from Pannell to Wilson be set aside as in fraud of the wife's marital rights and a lien should have been declared on the lot to reimburse Mrs. Pannell for the amount of her husband's debts paid by her and for whatever amount of alimony the court should allow her.

Therefore, I respectfully dissent from the opinion of the court in this respect.