GLASSCOCK *v.* MALLORY.

Opinion delivered June 2, 1919.

1. DEEDS—EXCEPTIONS—VALIDITY.—Where a deed described part of the premises as the southwest and the west half of the southeast quarter of a certain section, 240 acres, less 46 acres east of the railroad, when in fact there were 126 acres east of the railroad in the two tracts described, the exception was void.

2. VENDOR AND PURCHASER—RECORD—EFFECT.—Where both plaintiff and defendant claimed the same land under separate deeds, the plaintiff must prevail where his deed was first recorded.

3. REFORMATION OF INSTRUMENTS—BURDEN OF PROOF.—Where under the deeds the legal title passed to plaintiff, the burden of establishing grounds for reformation rested on defendant.

4. BOUNDARIES—RECOGNITION.—There is no reason for applying the doctrine of recognition of boundaries where the dispute was not as to the location of boundaries, but as to the substance of the conveyances under which the parties claim.

Appeal from Lee Chancery Court; *Edward D. Robertson,* Chancellor; affirmed.

*J. W. Morrow,* for appellant.

1. Before appellee can recover he must establish the fact that he owns land east of the railroad and he has failed to do so. He cannot rely on the weakness of appellant's title. His only claim is under Buford, and Buford had no title to any land east of the railroad. McCaleb, the common source of title, sold to Sellers, our grantor, the SW¼ and the W½ of SE¼ of section 28—less 194 acres west of the railroad. It is probable that he thought of the 240 acres, that 46 acres lay east of the railroad, but he sold all the SW¼ and W½ of the SE¼ except that part west of the railroad. But the deed to Sellers covered all land east of the railroad and Buford's covered all west of the railroad and took possession, and both held to their respective lands, recognizing the railroad as the boundary for five years or more. There was no mistake as to where the railroad ran. There is no allegation or testimony as to a mistake mutually. The boundary is certain and the acreage called for does not matter, as the boundary is certain, quantity must yield to monuments. 100 Ark. 105; 3 *Id.* 18. If the deeds were uncertain, the acts of the parties have made them certain.

2. Devlin on Deeds 7576-9. See also *Ib.* 1999-2000; 15 Mo. App. 590. Even if the description was void, the taking possession and the payment of the purchase price effectuated the sale. 51 Ark. 390.

The testimony shows that neither Buford nor any one claiming under him bought any of the land east of the railroad. After the sale and survey Sellers continued

to occupy all the land east of the railroad and both he and Buford recognized the railroad as the boundary line. The deed and Buford's conduct settle this controversy. He cannot accept the benefits under the deed and refuse the grantor the benefits which followed to him. Even if no deed had passed appellees are estopped, as where the line is in doubt the owners may fix a boundary line which if followed by possession is binding. 96 Ark. 168; 99 *Id.* 128; 105 *Id.* 598; 101 *Id.* 409; 104 *Id.* 99; 110 *Id.* 197; 23 *Id.* 704; 15 *Id.* 297; 23 *Id.* 704. The decree should be reversed as to all land east of the railroad in the SW¼ and W½ SE¼, section 28.

*Daggett & Daggett,* for appellee, C. T. Doan.

1. Both Doan and Mallory were innocent purchasers for value without notice. Neither knew that any of the lands claimed by Glasscock lay east of the railroad. The deeds from McCaleb were recorded on different dates and appellees' were recorded first and title vested first. 70 Ark. 256; 129 *Id.* 308; 196 S. W. 177; 46 Mo. 239; 58 Fed. 455.

2. Appellant has not had possession for the statutory period under color of title.

3. The cases cited by appellant do not apply because (a) there never has been any dispute as to the dividing line; (b) there never has been any agreement that the railroad was the boundary line, and (c) a tract of 87 acres is not a boundary strip, and (d) no controversy ever existed about this line until just before this suit, when Douglass made his survey.

4. Both Doan and Mallory are innocent purchasers for value without notice of appellant's claims. 2 Devlin on Deeds, § 747; 129 Ark 308; 196 S. W. 117; Kirby's Digest, § 763.

5. The language in a deed is construed most strongly against the grantor, and under McCaleb's deed to Buford all the SW¼ and all of the W½ of SE¼ was conveyed. 111 Ark. 220.

6. Where in a description there is an exception and it is indefinite or impossible to be located the exception

is void and the grantee takes the whole tract. 56 Ark. 41; 95 *Id.* 253; 85 *Id.* 1; 19 Ann. Cases 1207; 30 Ark. 640; 11 Am. St. 39; 97 Ala. 437; 11 So. Rep. 832; 135 Am. St. 342; 30 Ark. 657; 35 *Id.* 478; 48 *Id.* 419; 119 *Id.* 301; 106 *Id.* 83.

7. The statements of a grantor in a deed made after it is executed are inadmissible to impeach the deed, and the testimony of Johnston, Hope and Buford was properly excluded. 79 Ark. 426; 1 English 110; 9 Ark. 91; 43 *Id.* 320; 24 *Id.* 111; 90 *Id.* 149; 48 *Id.* 169; 101 *Id.* 409; 100 *Id.* 555; 103 *Id.* 193.

8. As the warrantor to the title to Mallory, Doan was a proper and necessary party to the suit.

9. The deed first recorded takes precedence. 70 Ark. 256, approved in 129 *Id.* 308; 196 S. W. 117. See also 46 Mo. 239; 58 Fed. 455.

10. As to adverse possession. This cuts no figure, as McCaleb was in possession of lands lying on both sides of the railroad and all of the property in litigation on January 2, 1912, and no bar had lapsed when suit was begun. The W½ of the SE¼ is clearly shown to be wild and unimproved and not in the occupation of any one. The cases cited by appellant are not in point.

11. The chancellor was correct in sustaining the motion to quash the portions of the testimony of Sellers, Hope and Johnston and also Buford. 40 Ark. 237; 90 *Id.* 149; 48 *Id.* 169; 101 *Id.* 409; 100 *Id.* 555. There was no competent testimony that the railroad was ever the boundary line.

Doan warranted the title to Mallory and was a proper party.

12. As to constructive notice the cases cited by appellant do not apply here. The shortage in acreage was not settled between Buford and Sellers.

13. On the cross appeal it is submitted that the deeds from McCaleb to the Bufords and Buford and Doan vested in C. T. Doan the whole SW¼ and W½ of SE¼ of section 28, and the deed from McCaleb to Sellers and subsequent conveyances conveyed no title whatever,

and under the deed from C. T. Doan to Mallory the title to all the lands except 46 acres on the east side of W½ SE¼ vested in Albert H. Mallory and the title to the 46 acres is now and always has been in appellee and cross appellant, C. T. Doan, and as to said 46 acres the decree should be reversed with directions to quiet the title in Doan.

McCULLOCH, C. J.   The parties to this litigation make conflicting claims to certain lands in Lee County, formerly owned by Clarence McCaleb, who is the common source of the assertion of title.  McCaleb owned a large body of land in that county containing about 1,300 acres, including 240 acres described as the SW¼ and the W½ of the SE¼ of section 28, township 3 north, range 3 east, and on January 2, 1912, he sold and conveyed something over 1,000 acres of it to R. W. Buford and his wife, Emma V. Buford, who subsequently conveyed to one Doan, who in turn conveyed to appellee Mallory. The description in the deed from McCaleb to the Bufords was, in part, as follows: "The southwest and the west half of the southeast quarter of section twenty-eight (28), 240 acres, less 46 acres east of the railroad." On the same day McCaleb executed a deed to F. T. Sellers conveying lands aggregating 312.31 acres, among which was a part of section 28, described as follows: "The southwest quarter (¼) and the west half of the southeast quarter (¼) of section twenty-eight (28), less 194 acres lying west of the railroad, all in township three (3) north of range three (3) east."

Sellers was acting as agent for the Bufords in the purchase from McCaleb of the lands embraced in the deed to the Bufords. The deed to the Bufords was filed for record on March 27, 1912, and the deed to Sellers was not filed for record until April 26, 1912. The line of railroad of the St. Louis, Iron Mountain & Southern Railway Company ran north and south through the southwest quarter of section 28, parallel with the east

boundary line of the quarter section, leaving 46 acres on the east side of the railroad in that quarter section. The railroad does not touch the west half of the southeast quarter of section 28, and all of the other land described in the deed to the Bufords lie west of section 28.

Appellant Glasscock asserts title under Sellers to the lands conveyed in the deed from McCaleb to Sellers, and he has been in occupancy of the lands in section 28 east of the railroad. This action was instituted by Mallory against Glasscock in the circuit court of Lee County for recovery of possession of all of the land except 46 acres lying on the east side of the west half of the southeast quarter (W¼ SE¼) of section 28. Appellant answered denying appellee's assertion of ownership of the land, and on his motion the cause was transferred to the chancery court, where it proceeded to a final hearing which resulted in a decree in favor of appellee quieting his title and awarding possession of all the lands in section 28, except 46 acres lying on the east side of the west half of the southeast quarter.

According to the facts, as disclosed by the testimony with respect to the location of the railroad, there are 126 acres east of the railroad in the two tracts described in the deeds as the southwest quarter and the west half of the southeast quarter of section 28. That being true, the exception in the deed of "46 acres east of the railroad" was void, and the effect of the deed was to convey the whole of the southwest quarter and the west half of the southeast quarter of section 28, 240 acres. *Mooney v. Cooledge*, 30 Ark. 640. Appellee had, therefore, a perfect record title to all of the lands in controversy, but he has conceded appellant's right to 46 acres on the east side of the west half of the southeast quarter of section 28, and the correctness of the court's decree in awarding it to appellant is not involved in this appeal. Appellee's deed was recorded first in point of time and his title under it must prevail as against any conflicting claim of appellant under the deed of McCaleb

to Sellers. *Penrose* v. *Doherty,* 70 Ark. 256. Appellant cannot claim as an innocent purchaser for the reason that the description in the deed to Buford was sufficient to put him upon notice of the extent of that grant, and also for the reason that the deed to Sellers, which was in the line of his own title, gave record notice that 194 acres of the southwest quarter and the west half of the southeast quarter of section 28 was excluded from the land, leaving only 46 acres of those two sub-divisions to be conveyed by that deed. The legal title having passed to appellee, the burden of establishing grounds for reformation rested on appellant, and we do not think the testimony adduced by him was sufficient to warrant a court of equity in granting that relief. It is clear from the deed that the intention of McCaleb was to convey to the Bufords 194 acres out of those two sub-divisions, and this is also apparent in the deed to Sellers.

There is testimony tending to show that Buford understood when he purchased the land that the railroad was to be his east boundary, but it also showed that he was ignorant of the true location of the railroad and supposed that he was to get the full acreage stipulated in his bargain. There are no equities in appellant's favor which call for a reformation of the deed so as to give him title to all of the land east of the railroad. The rule is well established by this court that the evidence which would justify the reformation of a deed must be clear and decisive, and the testimony in this case does not measure up to that standard. Nor is it sufficient to show that there was an agreement between the owners of the contiguous tracts as to the boundaries. The dispute arises in this case, not as to location of boundaries, but as to the substance of the respective conveyances under which the parties claim, and there is no reason for applying the doctrine of recognition of boundaries settled by agreement of the parties.

Our conclusion is that the decree of the chancellor is correct and the same is affirmed.