WOOD v. HAYE.

4-7006                                    175 S. W. 2d 189

Opinion delivered October 25, 1943.

*Geo. M. LeCroy,* for appellant.

*Claude B. Crumpler,* for appellee.

GRIFFIN SMITH, Chief Justice.   February 4, 1916, H. N. Slayter sold lands to J. J. Thurlkill, the description being "Fractional northeast quarter of section thirty, township eighteen south, range fifteen west, containing in all 150 acres, more or less." August 19, 1919, Thurlkill conveyed to Ed Combs the northwest quarter of the northeast quarter (40 acres) and fractional southwest quarter of the northeast quarter (30 acres).[1] November 16, 1920, Combs reconveyed to Thurlkill "The north three-fourths of the southwest quarter of the northeast quarter, . . . containing thirty acres." The grantor reserved "A seven-eight interest in all oil and gas rights in and to this land."

April 8, 1921, Thurlkill, by warranty deed, sold to D. C. Richardson "The southeast quarter of the northeast quarter and the north three-fourths of the southwest quarter of the northeast quarter, . . . containing seventy acres." There were no reservations.

---

[1] All the lands as to which title is questioned were in Section 30, Township 18 South, Range 15 West. Where deeds or leases were by husband and wife, or to husband and wife, only the husband is identified in this opinion.

894

The appeal relates to oil and gas rights pertaining to the thirty-acre tract.[2]

It is alleged that at the time Thurlkill conveyed to Richardson, he (Thurlkill) obtained from Combs a quitclaim deed covering all interest in the land. This deed, it is said, was lost before being filed for record. It is stipulated that the title contended for by appellants, who were plaintiffs below, stems from Richardson.

On April 8, 1921, Thurlkill executed and delivered to Combs an oil and gas lease covering the north three-fourths of the southwest quarter of the northeast quarter, the term being for five years. It will thus be seen that the deed from Thurlkill to Richardson and the lease by Thurlkill to Combs were made April 8, 1921, and the quitclaim deed from Combs to Thurlkill was concurrently executed, but its delivery denied.

The Thurlkill-to-Combs lease was filed April 9. On April 14 the subject matter was assigned by Combs to H. E. Hay by an "Instrument of Writing" in which it was recited that Combs had purchased of Thurlkill thirty acres located in section thirty; that previously Combs had deeded the land to Thurlkill, but "had retained thereon seven-eighths of the oil, gas, and mineral rights in and to said lands"; that Thurlkill had executed an oil and gas lease in favor of Combs; that Combs was then the owner of the lease referred to, "and also the owner of seven-eighths of the oil, gas, and mineral rights above referred to." The language following was that Combs sold "all of his rights above referred to, and the oil and gas lease above referred to," etc.

Appellants predicate their claims upon the assertion that Richardson was an innocent purchaser. It is conceded that the assignment executed by Combs April 14 conveyed "every right, title, and interest [the grantor] had in the minerals or lease on the land." But it is

2 Allegation was that Mace Wood owned in fee an undivided half interest in minerals under thirty acres in Section 30, Township 18 South, Range 15 West, Union County; that George M. LeCroy, Lizzie LeCroy, and Gladys Martha LeCroy were joint owners of a fourth of the mineral interest, and that Sam M. Richardson owned the remaining undivided fourth.

denied that Combs had any interest other than the oil and gas lease received by him April 8 from Thurlkill, and this, it is insisted, was delivered in consideration of Combs' act in quitclaiming to Thurlkill—a transaction intended, appellants say, to blot out "the remote, indefinite, and ambiguous reservation" contained in the deed from Combs to Thurlkill, dated November 16, 1920.

An argument is that the reservation, if it covered more than the right to lease, was void for uncertainty in that no time was fixed within which use should be made of the privilege retained; that if oil and gas "in place," as minerals, were the things reserved, then the fee owner could not be indefinitely circumscribed by something the grantor might or might not do; nor was there anything in the reservation expressly giving the right to drill wells, to erect derricks, construct tanks, or make use of the surface in exploring for oil and gas.

We agree with the Chancellor that the reservation was not to be ignored for the reasons assigned. The right to enter and to make reasonable use of the land in achieving in a workmanlike way the only result the parties could have intended (if, in fact, oil and gas in place, as distinguished from the right to lease, were retained) must be implied from the nature of the matters dealt with. Thornton, "The Law of Oil and Gas," vol. 1, § 342, states the better rule to be that in case of either a reservation or an exception, a grantor has the right to enter on the surface with all usual necessary appliances, and to remove the mineral without any express authority reserved to that effect. In case of a reservation of minerals, such property descends to the grantor's heirs.

It was said in *Bodcaw Lumber Company* v. *Goode*, 160 Ark. 48, 254 S. W. 345, 29 A. L. R. 578, that the separate title to minerals, if not otherwise expressed, is retained in perpetuity. In the Bodcaw case Chief Justice McCulloch discussed *Liston* v. *Chapman & Dewey Land Co.*, 77 Ark. 116, 91 S. W. 27, where it was held that a deed to standing timber which does not specify the time for removal conveys to the grantee an estate in the timber which runs with the land and goes on forever, "but the

right to enter upon the land for removing the timber exists for only a reasonable time after the execution of the deed." After commenting that there was a broad distinction between a sale of timber and a sale or reservation of mineral rights, the opinion says:

". . . we have no hesitancy in saying that the reason for that rule as applied to the removal of timber has no application to the enjoyment of mineral rights where there is no interference with the enjoyment of surface rights during the period of delay. Since there was an independent and separate right to the minerals, no lapse of time would impair the continuance of the right or bar its enjoyment on account of laches."

That oil and gas in place did not pass from a grantor whose deed reserved "the mineral rights in, upon, and under" designated lands was expressly held in *Sheppard* v. *Zeppa, Trustee,* 199 Ark. 1, 133 S. W. 2d 860. Appellants point to dissimilarity between wording of the reservations expressed by Combs and those contained in the McCall deed to the Stewards, referred to in the Zeppa case. There is want of exactness, but the variance is immaterial. Combs withheld ". . . a seven-eighths interest in all oil and gas rights in and to this land." McCall reserved the mineral rights "in, upon, and under." In each case mineral "rights" were reserved. Oil and gas in place were mineral rights, just as oil and gas "upon and under" the McCall lands were mineral rights.

It should be observed that in the so-called assignment of April 14 Combs mentions having retained "seven-eighths of the oil, gas, and mineral rights in and to said land." He then identifies the oil and gas lease issued in his favor by Thurlkill, and in conveying to Hay he seemingly sets out the two rights as separate interests.

Treating the transaction of April 14, 1921, as an oil and gas lease, appellants allege that Hay (April 30, 1921) duly assigned it to H. F. Alexander, the contention being that Hay, who as we have determined received two separate interests from Combs, assigned to Alexander all that he had so acquired. We think, however, that only

the leasehold was conveyed, leaving Hay the owner of seven-eighths of the oil, gas, and mineral rights pertaining to the land.

There is argument by appellants that, since matters essential to a completed transaction were not written into the deeds, parol testimony was admissible to show intentions of the parties. *Gray* v. *Brewer,* 177 Ark. 486, 9 S. W. 2d 81.[3]

In the first case cited Brewer was a merchant at Batesville. He sold cotton to Gray under a written contract in which there was a guaranty as to weight. The question was whether all agreements of the parties had been incorporated in the writing, or, more specifically, which of the two wrote into the contract the point of destination, and whether Brewer signed the face of invoices after the point of destination had been inserted. Oral testimony was, as the opinion discloses, admitted, but the controversy was between parties who executed the writing.

It is insisted that affirmation in *Keaton* v. *Murphy,* 198 Ark. 799, 131 S. W. 2d 625, was based upon testimony identical with that excluded in the instant appeal. It was there said: "Flenniken is dead, but all of the other named parties agree that Murphy, when the deed was executed, stated he would not convey any of the oil, gas, and minerals *in place,* and it was finally agreed that the deed should cover a one-half interest in the one-eighth royalty. Both Keaton and Sebersky testified that such was the intent." Analogy, say appellants, is that undisputed evidence shows the lease by Thurlkill was executed in exchange for Combs' quitclaim deed, which was the only consideration Thurlkill received for the lease. It is then said: "When you construe the two instruments together and forget about any quitclaim deed, the second instrument simply tells the time, the manner, and the mode in which Combs had agreed to exercise his oil and gas rights, and no other reasonable construction can be placed thereon."

---

[3] Other cases cited by appellants are: *St. Louis, I. M. & S. R. Co.* v. *Wynne Hoop & Cooperage Co.,* 81 Ark. 373, 99 S. W. 375; *Breckenridge & Brashears* v. *Hearne Timber Co.,* 135 Ark. 31, 204 S. W. 981.

The Chancellor found that although there was satisfactory proof that the lost deed had been executed, convincing proof of delivery was lacking. The record amply sustains this view. There was the further holding, consonant with the Zeppa decision (which the trial court thought controlling) that the language used by Combs in reserving oil and gas was legally sufficient to effectuate a separation of the two rights—one to the surface, the other to gas and oil as minerals in place—and that parol evidence was not competent to vary the terms. We assent to this view. In the Keaton-Murphy case testimony was that Murphy, *when the deed was executed,* stated that he would not convey any of the oil, gas, and minerals in place. The deed, by its terms, conveyed ". . . an undivided one-half interest of the one-eighth royalty held by the Murphy Land Company in and to all the oil and gas in, under, and upon" the lands described. There is no mention in the opinion that objections were made to evidence, and the decision did not turn on admissibility or inadmissibility. Furthermore, a royalty was the subject of controversy. Still another distinction in legal effect is that the testimony tended to support, rather than destroy or vary, language of the lease.

Records in the State Land Office, and copy of map filed as an exhibit to testimony in this appeal, show the northeast quarter of section thirty to be regular, containing 160 acres. Thurlkill's deed of August 19, 1919, described the thirty acres in question as "fractional southwest quarter of the northeast quarter," etc. But Combs' deed to Thurlkill the following year purports to convey "The north three-fourths of the southwest quarter of the northeast quarter, . . . containing thirty acres." This 1920 deed was the one in which the reservation was written, and the deed is good. The description in the 1919 deed purported to pass title to more land than the grantor now appears to have owned; but, *prima facie,* it conveyed the southwest quarter of the southeast quarter. In *Rucker* v. *Arkansas Land & Timber Co.,* 128 Ark. 180, 194 S. W. 21, Chief Justice McCulloch said: "A description used on tax books, like a description used elsewhere, has reference to government

surveys, and a mere specification of the section or sub-division thereof is sufficient. If it is in fact a fractional section or subdivision it is so indicated on the government survey and it is unnecessary to use the word "fractional" as a descriptive word, and on the other hand, the improper use of the word, when the section is not fractional, does not invalidate the description. The fact that the acreage is stated incorrectly does not lessen the certainty of the description."

The rule is that, as between the parties to a conveyance, intention will govern if the general description furnishes a sufficient key for identification.[4]

The holding in *Turner* v. *Rice*, 178 Ark. 300, 10 S. W. 2nd 885, was that "Wherever one is granted land by government call, he takes the whole of the call without reference to the amount of acreage added to the description. In other words, if one is deeded the northeast quarter of any particular section containing any particular number of acres, he would take the whole quarter section, irrespective of the number of acres mentioned. Of course it would be different if any particular number of acres was conveyed to one in any particular portion of a government call."

It is not disputed that Thurlkill acquired from Slayter the land Thurlkill later sold to Combs. The flaw alleged is that Thurlkill failed to designate with certainty when he conveyed to Combs. But Combs, in reconveying to Thurlkill, correctly described thirty acres and Thurlkill accepted the deed with its reservation of oil and gas. Certainly appellants, in relying on the Richardson deed and in treating his title as a common source, cannot complain if the court holds that Combs' reservation is good when the interest they seek to establish must find substance in the same description. See 136 A. L. R., p. 644.

Appellants attach controlling importance to their contention that Richardson bought with knowledge that a quitclaim deed had been executed; that he filed his

---

[4] See *Davis* v. *Burford*, 197 Ark. 965, 125 S. W. 2d 789, for discussion of mutual mistake resulting in erroneous description.

deed and took possession April 11—three days before Hay became interested. This, say appellants, was notice to Hay. But, under the Chancellor's finding, to which we assent, the quitclaim deed was not delivered.

Affirmed.

KNOX, J., disqualified and not participating.