OGLE *v.* HODGE.

4-9280 · 234 S. W. 2d 24

Opinion delivered November 20, 1950.

*Gene Bradley,* for appellant.

DUNAWAY, J. Appellant, Thelma Ogle, brought an action in ejectment against appellees, Hodge and wife, and Overton and wife. Appellant sought to recover a strip of land about eight feet wide on the north side of lots owned by the appellees, ownership of which she claimed by adverse possession. The Hodges and Overtons answered with a general denial and motion to transfer to equity, alleging that appellant was attempting to interfere with the use of a public road, that she was insolvent, and that they would be irreparably damaged unless appellant was restrained from interfering with their use of said road.

The cause was transferred to equity. This appeal is from a decree dismissing Thelma Ogle's complaint and permanently enjoining her from interfering with the use of the public thoroughfare in question.

All of the property involved in this litigation is located in what was originally platted in 1924 as the J. P. Pride Subdivision to the City of Blytheville, Arkansas. The lots now owned by the Hodges and the Overtons were situated in Block "J" of said subdivision, and were bounded on the north by Carolyn Avenue. This and other property had been mortgaged by Joe P. Pride to the American Central Life Insurance Company, which in May, 1936, bought in the property at a foreclosure sale. Thereafter the various owners of the property in the J. P. Pride Subdivision petitioned the County Court of Mississippi County, Chickasawba District, to reduce the lots in said subdivision to acreage and to close the streets therein. On September 26, 1936, the County Court granted the prayer of the petition and ordered a new plat to be filed.

This new plat, known as the Replat of the J. P. Pride and Gateway Addition, was subsequently duly filed, showing the "Irregular Lots" into which the old subdivision had been re-divided by order of the County Court. Old Block "J" was re-platted as "Irregular Lots" 44, 45, and 46; and Carolyn Avenue as "Irregular Lot" 43. Lot 43 is shown to be 702 feet in length east

and west and 60 feet in width north and south, immediately adjacent to the north lines of Lots 44, 45 and 46.

Appellant Ogle is the owner of part of Lot 45, not involved in this suit; the N½ of the West 252 feet of Lot 43; and "225 ft. out of Lot 43 located between the East 225 ft. and the West 252 ft. of said Lot 43." It is the last-described property that adjoins the property of the Hodges (west 50 ft. of Lot 46) and of the Overtons (the balance of Lot 46).

North of Lot 43, formerly Carolyn Avenue, is Lot 50 owned by Moore Brothers. Ever since appellant acquired the described interests in Lot 43 on September 3, 1940, and apparently for some years before there has been a fence between Lots 43 and 50, referred to by the witnesses as "Moore Brothers' fence."

We shall first discuss appellant's claim by adverse possession to the north eight feet of the Hodge and Overton lots, and then consider the question of whether there is a public thoroughfare over Lot 43.

It is appellant's theory that under her deed to the above-described middle section of Lot 43 she is entitled to a lot 60 feet wide; and that she went into possession of a strip of land 60 feet in width, measured from the "Moore Brothers' fence." Apparently everyone had assumed that this fence was on the true line between Lots 43 and 50 until the dispute arose between appellant and appellees as to the correct boundary between their property, when the appellees built fences and driveways and otherwise exercised affirmative acts of ownership, on the strip of land now in litigation. A survey then made disclosed that the true line between Lots 43 and 50 was approximately eight feet north of the fence.

Appellant, and other witnesses in her behalf, testified that she had used Lot 43 as farm property, planting it to various crops, beginning in April, 1941, and continuing until October 3, 1947, when appellees began occupying the disputed strip to the south of Lot 43. According to this testimony the first visible and notorious acts of ownership upon which appellant based her claim of title

by adverse possession occurred less than seven years before appellees exercised their right of possession of land to which they admittedly had record title. This proof was insufficient to establish title by adverse possession. *Culver* v. *Gillian*, 160 Ark. 397, 254 S. W. 681.

In addition, appellant's own testimony on cross-examination showed that any possession she may have had of any part of Lot 46 was not under a claim adverse to the true owners.

"Q. Now, Miss Ogle, when you bought the 225 feet out of Lot 43 you naturally supposed that Moore's fence was on his line, didn't you?

"A. Yes, sir; he said it was.

"Q. He said it was on his line?

"A. Yes.

"Q. And you really and truly believed at that time that that was a fact?

"A. Yes.

"Q. Then it was your intention to measure 60 feet south of the true line, wasn't it?

"A. The fence, I thought that was the true line.

"Q. You thought the fence was the true line?

"A. Yes.

"Q. And it was your intention to measure 60 feet south from the true line?

"A. Yes, sir.

"Q. And it was your intention to take the 225 by 60 feet strip out of Lot 43 from one true line to the other true line, wasn't it?

"A. Yes, sir.

"Q. You knew Lot 43 was 60 feet wide?

"A. Yes, sir.

"Q. And it was your intention to take from the true line on the north to the true line on the south?

"A.   Yes, sir.

"Q.   But you were going on the assumption and be-
lief that Moore's fence was on the true line?

"A.   Yes, sir.   He said it was on the line, and that
is what the company that sold it to Houston measured it
from.   Then Houston sold it to me.

"Q.   But it was your intention all the time to take
the 60 feet as shown by the plat?

"A.   Yes."

We think this case comes within the rule that where
one, through mistake, takes possession of adjacent lands
intending to claim only to the true boundary, the act is
not adverse.   See *Martin* v. *Winston,* 209 Ark. 464, 190
S. W. 2d 962, and cases therein cited at page 467.

The Chancellor correctly held that appellant failed
to prove title by adverse possession to the eight foot strip
across appellees' property.

We now turn to a consideration of the conflicting
claims concerning the presence of a public road across
Lot 43, or what had been Carolyn Avenue.   Appellant
contends that Carolyn Avenue was closed as a public
thoroughfare by virtue of the county court order of 1936.
She further contends that any use of a road across this
property since 1936 had been merely as a private drive-
way in which the public acquired no rights.

On the other hand, appellees contend, as set out in
their answer (they have not favored us with a brief), that
the county court order closing the street was void on its
face; that irrespective of the validity of the order, Caro-
lyn Avenue had been continuously used as a public
thoroughfare from 1924 until the time of this suit, and
that the public had thereby gained a prescriptive right in
said roadway.

The testimony was in conflict as to the length of
time Carolyn Avenue had been used as a road, and as to
the nature and extent of such use.   Although the basis
upon which the Chancellor enjoined appellant's inter-
ference with use of this roadway does not appear, we

think the evidence justifies a finding that the public had acquired a way across this property by prescription, even assuming a valid order by the county court in 1936 vacating Carolyn Avenue as a road or street. Since the decree will be affirmed on this ground, we do not deem it necessary to discuss the validity of the county court order.

Oliver Coppedge, a son-in-law of Joe P. Pride, who originally owned all the property in question, testified that to his knowledge since 1935 Carolyn Avenue, or Lot 43, had been used continuously as a street.

Appellant herself testified that in 1944 she had built a store at the extreme west end of Lot 43 (the part described as N½ of the West 252 feet of Lot 43, not the middle section which adjoined the appellees). She testified that the customers of her store came in from the east on a road across Lot 43, partly on her property and partly on an adjoining strip owned by Mitchell Houston. (He owned the S½ of the West 252 feet.) She further testified that in 1942 "we did open up room for one car to drive through" and that cars did drive through. Appellant also testified that her neighbors came in and out over Lot 43, and that it was graded into a street in 1945.

Mitchell Houston, owner of the adjoining part of Lot 43, testified on cross-examination that a road does exist through this property, which was graded in 1945 or 1946 by the county. Other witnesses for appellant admitted that there was a graded street in to the store and that it was used by the public.

From the testimony of appellant's own witnesses it is clear that from 1942 there was a road used by the public. Coppedge's testimony, as already stated, was that this use by the public went back as far as 1935. We have concluded that the preponderance of the evidence shows the establishment of a public road by prescription, by its open, continuous and adverse use by the public for

a period of more than seven years. *Harrison* v. *Harvey,* 202 Ark. 486, 150 S. W. 2d 758.

The decree is affirmed.

Justice LEFLAR dissents.