RYE *v.* BAUMANN.

5-1928                                    329 S. W. 2d 161

Opinion delivered November 23, 1959.

*Wiley W. Bean,* for appellant.

*Edward H. Patterson* and *Williams & Gardner,* for appellee.

JIM JOHNSON, Associate Justice. This is an adverse possession case concerning one acre of land situated in the Southwest corner of the SE¼ NE¼ of Section 22, Township 9 North, Range 22 West, Johnson County, Arkansas.

Appellee, J. J. Baumann, was in possession of the land and on attempting to move a fence Appellant, C. W. Rye, prevented him from doing so. Appellee brought this suit to quiet title in him to the one acre. The lower court found that although he did not have color of title, he and his predecessors in possession had exercised sufficient acts of ownership over the land for a period long enough to perfect title to it under Ark. Stats. 37-101.

There have been three predecessors in possession immediately prior to the Appellee involved in this litigation and their deeds are as follows:

On May 19, 1945, R. A. Stout, by warranty deed, conveyed to Edwille Birkhahn a tract of land and excepted from the conveyance the one acre in question. This deed pointed out that the one acre had previously been conveyed to L. J. Anthony.[1] The exception in the deed set out the legal description of the one acre as follows:

"And one acre of land conveyed to L. J. Anthony described as beginning at the Southwest corner of said Southeast Quarter of the Northeast Quarter of Section

---

[1] Mr. Anthony is the predecessor in paper title to the Appellant.

Twenty-two, Township Nine North, Range Twenty-two West, running East on Quarter section line three-fourths of an acre, thence North to Dover County Road; thence West to Quarter section line; thence South along said line to beginning.''

On February 24, 1953, Edwille Birkhahn conveyed to Ira Whorton a tract of land by warranty deed and also excepted from this conveyance this one acre of land.

On December 27, 1954, Ira Whorton conveyed to the Appellee a tract by warranty deed which also excepted this one acre from the conveyance.

On June 24, 1955, L. J. Anthony conveyed to Appellant this one acre by warranty deed.

The Appellant claims that the exception in the deed to the Appellee forbids the Appellee to tack the possession of his predecessors in possession because, by taking the deed with the exception, he recognized a superior title. Appellant also relies on a statement made during cross-examination of Mr. Birkhahn, one of the prior possessors, that he never claimed any more than his deed called for, and that this shows a lack of intention on his part to claim adversely to the appellant. In Arkansas, if the intent of the disseisor is merely to hold to the true line, no adverse possession can arise. *Ogle* v. *Hodge,* 217 Ark. 913, 234 S. W. 2d 24; *Carter* v. *Roberson,* 214 Ark. 750, 217 S. W. 2d 846; *Wilson* v. *Hunter,* 59 Ark. 626, 28 S. W. 419.

On direct examination Mr. Birkhahn testified as follows:

''A. The whole time that I owned the land, there wasn't a soul said anything about the house. I thought that it was mine and I still think that it was. It was mine.''

We think the remark relied on by the Appellant loses its force when considered along with the testimony of Birkhahn on direct examination, and the fact that Birkhahn put a roof on the house and windows in it and cut a twelve foot room from the back of the house

and rented it out and remained in possession, without disturbance from Appellant or his predecessor, for a period of over seven years. In a situation such as this, an honest claimant upon being asked about his intent, unless previously warned, might not think to qualify his answer so as to claim what he considered his own, but would state that he claimed only his own,[2] and on such a chance statement his claim would disappear. In arriving at the intent of the disseisor we think it is better to weigh the reasonable import of his conduct in the years preceding the litigation rather than rely on one remark made during the stress of cross-examination (which is elsewhere refuted).

Next, we must decide the effect of the exception in the deeds. Land embraced in an exception in a deed must be described with the same certainty that is required when describing the property conveyed and failure to do so will render the exception void and the grantee takes the whole tract, including that part which was intended to be excepted.[3] *Parker* v. *Cherry*, 209 Ark. 907, 193 S. W. 2d 127; *Glasscock* v. *Mallory*, 139 Ark. 83, 213 S. W. 8; *Mooney* v. *Colledge*, 30 Ark. 640.

The deed from Birkhahn to Whorton and the deed from Whorton to Appellee did not describe this exception but referred to the deed from Stout to Anthony. The deed from Stout to Birkhahn contained a description and it was recorded. A description of land may be established by reference to other instruments, such as another deed on record. Jones on Arkansas Titles, Sec. 254; *Oliver* v. *Howie*, 170 Ark. 758, 281 S. W. 17.

The rule is well established that a deed will not be held void for uncertainty of description if by any reasonable construction it can be made available and if the descriptive words themselves furnish a key for identifying the land conveyed, nothing more is required. *Davis* v. *Burford*, 197 Ark. 965, 125 S. W. 2d 789. In the present description we have this call: "running east on Quarter Section line three fourth acres". It might be

---

[2] There is a note on this subject in 6 Ark. Law Review page 67.
[3] There is an annotation on this subject in 162 A.L.R. 288.

argued that "three fourth acres" is not a unit of lineal measure but it has been used in that respect. In the case of *Fowler* v. *Tarbet,* 45 Wash., 2d 332, 274 P. 2d 341, the court had before it a deed containing the description "2 acres in width". It was there held that "2 acres in width" is a definite lineal measurement and would be a line approximately 417.4 feet in width. An "arpen" is a square measure of land[4] and it has often been held to be sufficient as a lineal measure along one side thereof. *Cause of the New Orleans Batture,* 4 Hall's Am. Law J. 518; *Strother* v. *Lucas,* 6 Pet. 763, 8 L. Ed. 573; *United States* v. *Le Blanc,* 12 How. 435, 13 L. Ed. 1055; *McMillan* v. *Aiken,* 205 Ala. 35, 88 So. 135.

In the present case we have a description that lends itself to no other interpretation than the surveyor intended to run East on the quarter section line one hundred fifty-six feet and six inches, which is approximately three-fourths the distance of one side of an acre. Even ignoring the probable existence of monuments on the premises to aid him, a surveyor, after running East three-fourth acre, could easily run north to the "Dover County Road" and measure the distance, then run west to the quarter line, then South on the quarter line to the point of beginning, and by doing so could close the description.

The exception in the deed forbids the Appellee from the claiming under color of title,[5] so any claim of adverse possession must be founded on possession alone. Mere possession, without color of title, for the statutory period is sufficient to vest title in the disseisor. Ark. Stats. 37-101 to 37-103; *Dierks Lumber & Coal Co.* v. *Vaughn,* 131 F. Supp. 219, affirmed 221 F. 2d 695. The possession must be actual, adverse, continuous, open,

---

[4] An arpen is defined as a measure of land of uncertain quantity, mentioned in Domesday and other old books, by some called an acre, by others a furlong, being a French measure of land containing 100 square perches of 18 feet each, or *an acre.* 94 C.J.S. Weights & Measures page 538.

[5] "Color of title is an apparent title to land founded upon a written instrument, such as a deed, levy of execution, decree of court or the like. Color of title, for the purpose of adverse possession under the statute of limitations is that which has the semblance or appearance of title." Bouviers Law Dictionary, 3rd Ed.

notorious, exclusive and hostile and for the statutory period.

It might be contended Appellee is estopped to claim adversely by accepting his deed with the exception in it. In the case of *Guaranty Loan & Trust Co.* v. *Helena Imp. Dist.*, 148 Ark. 56, 228 S. W. 1045, this Court said:

"A rule, apparently universal in its application, seems to be that a reservation or exception in favor of a stranger to a conveyance is void or inoperative, and that a grantee in a deed containing a reservation or exception in favor of a stranger to the conveyance is not estopped to deny its efficacy."

Birkhahn, by virtue of time in possession and the other requisites heretofore set out having been met, obtained title to this one acre through adverse possession. In 1954, Birkhahn conveyed by warranty deed to Whorton, the deed containing an exception in favor of Anthony, the immediate predecessor in paper title to Appellant.[6] There are two questions presented by this conveyance: First, what effect does this exception have on Anthony and his grantee, the Appellant? The rule is, an exception in a deed in favor of a stranger to the deed is void and inoperative except to confirm a right which the stranger already has. *Guaranty Loan & Trust Co.* v. *Helena Imp. Dist., supra;* 26 C. J. S. Deeds, Sec. 140 (3); 39 A. L. R. 128; 16 Am. Jur., Deeds, Sec. 300, Thompson on Real Property (permanent edition) Sec. 3483. Anthony was a stranger[7] to this deed and the exception did not confirm a right which he already had because prior to this deed Birkhahn had divested him of title.

---

[6] "A reservation is always of something taken back out of that which is clearly granted; while an exception is of some part of the estate not granted at all." 4 Kent's Commentaries, 468 *Bodcaw Lbr. Co.* v. *Goode,* 160 Ark. 48, 254 S.W. 345, 29 ALR 578.

[7] "A person who is not a party to a deed is said to be a stranger to it." Byrne's Law Dictionary, 844.

"The word 'stanger' comes almost directly from the latin 'extra', meaning beyond or outside, and, observing all the common and legal definitions of the word, it has only the same value in expressing thought as its Anglo-Saxon counterpart, the word 'outsider' ". 83 C.J.S. page 109.

The second question is did the giving of the deed with the exception in favor of Anthony revest title in Anthony after Birkhahn, the disseisor, had held the land for over seven years? This question was answered in *Shirey* v. *Whitlow,* 80 Ark. 444, 97 S. W. 444, where this Court said:

"If one before the statutory period has run, and before he has acquired title by adverse possession, acknowledges or recognizes the title of the owner, such recognition will show that his possession is not adverse, and the statute of limitations will not commence to run against the owner until the adverse claimant repudiates the title of the owner, but recognition after the full statutory period had elapsed will not have that effect; for where title by limitation has become vested in the adverse claimant, a mere recognition of some other title does not revest title acquired by adverse possession."

This is conclusive against the Appellant, but there is still the question of the effect of the exception in the deed from Birkhahn to Whorton, as between the parties. The rule is, the land embraced in the exception cannot pass to the grantee. See: Thompson on Real Property (permanent Ed.) Sec. 3484; 16 Am. Jur. Deeds, Sec. 301; 39 A. L. R. 132. So it seems Whorton did not receive title to this one acre under his deed from Birkhahn and title would remain in Birkhahn. But we have Birkhahn's testimony that he sold the land to Whorton and that Whorton went into possession of it. As between the parties to a conveyance, intention will govern if the description furnishes a sufficient key for identification. *Wood* v. *Haye,* 206 Ark. 892, 175 S. W. 2d 189.

There is sufficient testimony to support the intention of Birkhahn to transfer the property to Whorton, but the deed from Whorton to Appellee also contained the exception, and, since Whorton was not present at the trial below, we cannot say whether he intended to convey to Appellee only what his deed called for or if he intended to convey all the tract, including that part embraced in the exception. In the absence of Whorton's testimony on this subject, the decree is reversed and re-

manded for further proceedings consistent with this opinion.

GEORGE ROSE SMITH, J., dissents.

GEORGE ROSE SMITH, J., dissenting. I would affirm the decree on the ground that the description of the excepted one acre is void. This description can be followed by a surveyor only if an acre is taken to be a measure of distance. "Acre" is defined by Webster's New International Dictionary (2d Ed.) as the area of a parcel forty rods long by four rods broad, and by Bouvier's Law Dictionary as a quantity of land containing 160 square rods, "in whatever shape." The term is essentially a measure of area; I do not think it has a sufficiently fixed and definite meaning as a measure of distance to warrant its use in that sense in the legal description of real property.

The majority's statement that three fourths of an acre is 156.5 feet is apparently based on the fact that a square acre, containing 43,560 square feet, would have sides approximately 208.7103 feet long. (The length is necessarily an approximation, as it is mathematically impossible to find the exact square root of 43,560.) Apart from the fact that the majority have introduced an element of uncertainty into the law of real property, where certainty is the most important requirement in the law, I have never heard the word acre used as a measure of distance and am not convinced that it has an established meaning in that sense. Who ever heard of a man walking ten acres before breakfast? One might as well declare that a gallon is 6.14 inches, because that would be the approximate length of the side of a cubic gallon. In my opinion the grantors in the deeds before us failed to describe the excepted acre with the certainty that the law wisely requires in matters of this kind.