Keith DICKSON *v.* James YOUNG
and Barry N. Young

CA 01-1328                                    85 S.W.3d 924

Court of Appeals of Arkansas
Divisions I and II
Opinion delivered October 2, 2002

*Hobbs, Garnett, & Naramore, P.A.*, by: *Ronald A. Naramore*, for appellant.

*Bachelor & Newell*, by: *G. Latta Bachelor, III*, for appellees.

S AM BIRD, Judge. In 1959, the parents of appellant Keith Dickson purchased two acres in Garland County; they resided there until their deaths in 1997 and 1998. His siblings then transferred their inherited interest in the land to him. James Young owns land to the west of the Dickson property. In 1997, Young built a road on land that he believed to be his by his deed.

Keith Dickson brought suit to quiet title, alleging that the land across which Young built the road was his (Dickson's) by his

deed description, or if not, that he had acquired it by adverse possession. The property possessed by Dickson was not in conformity with his deed description: an erroneous determination of a corner point resulted in Dickson occupying a parcel of land that was shifted to the west from what the actual deed description encompassed. The trial court granted Young's motion to dismiss, finding that Dickson did not possess the requisite intent to possess this western land adversely. We reverse and remand.

Dickson appeals, contending that the trial court erred in dismissing his claim for adverse possession.[1] Young contends, and the trial judge believed, that Dickson lost his claim because he admitted that he had no intent to take another's land. The law of adverse possession, and specifically the intent required, has often been misinterpreted and misapplied. The question of intent becomes one of nuance in many cases, with hair-splitting terminology deciding the fate of the possessor's claim. This holds especially true in cases of mistaken boundary. Our supreme court, in 1894, speaking to adverse possession, stated that:

> There must be an intention to claim title. If one of two adjacent owners inclose or build upon his neighbor's land "through mere inadvertence, or ignorance of the location of the real line, or for purposes of convenience, and with no intention to claim such extended area, but intending to claim adversely only to the real or true boundary line, wherever it might be, such possession would not be adverse or hostile to the true owner." But it would be if he inclosed, or built upon and held, the land under the belief and claim that it was his own, even though the claim of title was the result of a mistake as to the boundaries of his own land. In such a case, there is a clear intention to claim the land occupied or inclosed, and the possession does not originate in an admitted possibility of mistake.

*Wilson v. Hunter*, 59 Ark. 626, 628, 28 S.W. 419, 419 (1894) (citation omitted).

---

[1] The decree quieted title in both James Young, the appellee herein, and Barry Young, the intervenor below. However, Dickson's notice of appeal relates only to the quieting of title in favor of James Young.

■ When a landowner, through mistake as to his boundary line, takes possession of land of an adjacent owner, intending to claim only to the true boundary, such possession is not adverse, and, though continued for the statutory period, does not divest title; but when he takes possession of the land under the belief that he owns it, incloses it, and holds it continuously for the statutory period under claim of ownership, without recognition of the possible right of another on account of mistake, such possession is adverse. *Davis v. Wright*, 220 Ark. 743, 249 S.W.2d 979 (1952); *Butler v. Hines*, 101 Ark. 409, 142 S.W. 509 (1912). If the intention is to hold adversely, the statute runs, regardless of any mistake as to boundary or title. *Bayles v. Daugherty*, 77 Ark. 201, 91 S.W. 304 (1905).

■ The supreme court later noted, however, that "an honest claimant upon being asked about his intent, unless previously warned, might not think to qualify his answer so as to claim what he considered his own, but would state that he claimed only his own, and on such a chance statement his claim would disappear." *Rye v. Baumann*, 231 Ark. 278, 281, 329 S.W.2d 161, 164 (1959). The court concluded that "in arriving at the intent of the disseisor we think it is better to weigh the reasonable import of his conduct in the years preceding the litigation rather than rely on one remark made during the stress of cross-examination (which is elsewhere refuted)." *Id*. This rationale is in accord with the "oft-repeated statement that adverse possession is a possession commenced in wrong but maintained in right," as such statement "does not mean that the possessor must commence his possession with an intentional wrong, for the doctrine of adverse possession is intended to protect one who honestly enters into possession of land in the belief that the land is his own." *Barclay v. Tussey*, 259 Ark. 238, 241, 532 S.W.2d 193, 195 (1976).

■ In *Reeves v. Metropolitan Trust Co.*, 254 Ark. 1002, 498 S.W.2d 2 (1973), the supreme court clearly held that an admission of no intent to take another's land was not fatal to an adverse possessor's claim in a mistaken boundary context. Reeves claimed two parcels of land, one that he knew that he did not own and one that he believed was his own. Reeves made the unfortunate admission that has often and erroneously been held fatal: that he

did not intend to claim any land that he did not own. The supreme court held that, because of this statement, Reeves did not possess the requisite intent as to the parcel of land that he knew he did not own. However, the court held that he adversely possessed the other parcel, despite his admission. The difference between these parcels was Reeves's knowledge — if a claimant knows that the land is not his and claims no intention to take land that is not his, there of course can be no intent to possess adversely. However, if a claimant does not know that the land is not his, as in mistaken boundary line cases, an intent not to take another's land is irrelevant and disregarded by the supreme court because of the nature of mistaken boundary line cases.

This court in *Hicks v. Flanagan*, 30 Ark. App. 53, 782 S.W.2d 587 (1990), followed this rationale and, relying on *Rye, supra,* as authority, found adverse possession established where appellants had admitted no intention of taking property that did not belong to them but "honestly believed that their property existed up to the fence and . . . claimed ownership of it." When the evidence tends to show that the possession has all the qualities of an adverse holding, it may be presumed that the possession is adverse, absent evidence to the contrary. *Id.* This court, in accord with the supreme court's instruction, did not view Hicks's admission of lack of intent as evidence to the contrary. Instead, this court accepted the objective conduct of the possessors as sufficient from which to derive the requisite intent. This conduct included maintaining the property up to the fence line that was the mistaken boundary, maintaining a garden on the property, and mowing the property. This objective conduct manifested the subjective belief, to which was testified, that Hicks owned all the property up to the mistaken property line.

A claimant must intend to claim the land that he is possessing, regardless of whether someone else claims title. Without knowledge that the claimed land is not his, the adverse claimant's admission that he did not intend to take another's land does not destroy his claim. Rather, it is the claimant's objective conduct from which his subjective intent to claim the land that he is possessing is derived that is determinative.

In the case at bar, Dickson maintained the property as his own, subjectively believing that he owned all of the property up to the mistaken boundary. He maintained four garden areas on the property, mowed, and built a wood shed on the claimed property. This objective conduct is sufficient to derive intent to possess adversely. Though perhaps Young may present evidence to the contrary, Dickson has presented evidence sufficient to withstand a motion to dismiss and this case must be remanded for a new trial.

Reversed and remanded.

JENNINGS, NEAL, VAUGHT, CRABTREE, and BAKER, JJ., agree.